**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **Frank Vaughan,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Lewisville Independent School District, and** | § | **CIVIL ACTION NO. _____** |
| **Kronda Thimesch, Allison Lassahn, Angie** | § | |
| **Cox, Katherine Sells, Jenny Proznik, Kristi** | § | |
| **Hassett, and Tracy Scott Miller, in their** | § | |
| **official capacities,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**COMPLAINT FOR DECLARATORY AND**
**PERMANENT INJUNCTIVE RELIEF CONCERNING**
<u>**VIOLATIONS OF SECTION 2 OF THE VOTING RIGHTS ACT**</u>

**BREWER STOREFRONT**

By:  <u>*/s/ William A. Brewer III*</u>
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Michael J. Collins
State Bar No. 00785493
mjc@brewerattorneys.com
Theresa L. Melia
State Bar No. 24099719
tlm@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................1

II. JULISDICTION AND VENUE.................................................................................2

III. PARTIES ...............................................................................................................3

    A.    Plaintiff ................................................................................................3

    B.    Defendants ..........................................................................................5

IV. FACTS ..................................................................................................................7

    A.    The Lewisville Independent School District........................................7

    B.    LISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process. ..................................................7

    C.    Affluent White Trustees Have Failed To Represent A Significant Portion of This Diverse Multiethnic, Multiracial, And Multilingual Community...................8

    D.    LISD's All White Board Fails Non-White Children. ...............................9

    E.    All White Board Closes The Doors On Majority-Minority Schools. ...................11

    F.    LISD Is Segregated By Race And Educational Outcome....................................11

    G.    The Discriminatory Effects Of LISD's Electoral System Upon Minority Voters: LISD's De Facto Segregated Schools Are Failing....................................13

    H.    Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place. ........................................................................16

V. CLAIMS................................................................................................................17

    A.    Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act ...........................................................................................17

    B.    Count 2: Violation Of The Fourteenth And Fifteenth Amendments Of The Constitution.........................................................................................18

    C.    Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution ..............................19

    D.    Count 4:  Request For Attorneys' Fees...............................................20

VI. REQUEST FOR RELIEF....................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Branch v. Smith*,
    538 U.S. 254 (2003) ................................................................................................17

*Zimmer v. McKeithen*,
    485 F.2d 1297 (5th Cir. 1973) .............................................................................16

**Statutes**

28 U.S.C. § 1331 ...........................................................................................................2

28 U.S.C. § 1343(a)(3) ..................................................................................................3

28 U.S.C. § 1343(a)(4) ..................................................................................................3

28 U.S.C. § 1391(b)(1) ..................................................................................................3

42 U.S.C. § 1988(b) .....................................................................................................20

52 U.S.C. § 10301 ................................................................................1, 2, 17, 18, 19, 20

52 U.S.C. § 10310(e) ...................................................................................................20

Tex. Educ. Code Ann. § 11.054 (b)-(c) .......................................................................17

**Other Authorities**

U.S. Const. amend. XIV and XV ............................................................2, 17, 18, 19

Plaintiff Frank Vaughan files this Complaint for Declaratory and Permanent Injunctive Relief Concerning Violations of Section 2 of the Voting Rights Act ("Complaint") against defendants Lewisville Independent School District ("LISD"), and Kronda Thimesch, Allison Lassahn, Angie Cox, Katherine Sells, Jenny Proznik, Kristi Hassett, and Tracy Scott Miller in their official capacities as members of the LISD Board of Trustees (each individually, a "Trustee" and collectively, the "Board" or "Defendants"), as follows:

## I.

### PRELIMINARY STATEMENT

1.     Elected school board trustees, responsible for the oversight, financing, and management of public-school systems, hold some of the most important positions in representative government because they directly influence the education of the next generation, and the mark that generation will make on their communities.  However, when the electoral process from which those officials are chosen "stacks the deck" against people of color – effectively denying non-white voters a meaningful voice – such bodies cease to be "representative."

2.     The at-large system for electing the seven-member Lewisville Independent School District ("LISD" or "District") Board of Trustees ("Board"), as currently employed by the District, effectively denies membership and representation to Hispanics and other people of color.  Worse yet, it does so while people of color comprise a significant portion of eligible voters within LISD – and an even larger percentage of the District's student population.

3.     In aggregate, LISD is racially and ethnically diverse, with students of color forming over 58% of the total student body in 2017-18, according to the Texas Education Agency ("TEA").  In particular, Hispanic students make up 29.6% of the student body, and are the second largest demographic group.  Yet, an achievement gap exists between a small fraction of schools that enroll a majority of white students and the schools in the District that educate predominantly children of

color.  The Board, which oversees a nearly $490 million budget, is failing the non-white population.  In their most formative years, non-white children within LISD are receiving a second-rate education, with less than one-quarter of students meeting grade level in some schools.  On the other hand, in the majority white, predominantly affluent elementary schools in the areas where the Trustees reside, two-thirds or more of the children met grade level across all grades and subjects tested.  The Board consistently prioritizes this cluster of high-performing, predominantly affluent schools at the expense of the rest of the community.

4.      Mr. Vaughan brings this Complaint because the at-large election system presently employed in this District denies equal voting opportunity to voters of color and many of the parents of children enrolled in LISD schools, and thereby denies these residents the opportunity to elect candidates of their choosing to represent their communities.  Accordingly, Mr. Vaughan seeks judicial relief for violations of Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "Voting Rights Act") and the Fourteenth and Fifteenth Amendments of the United States Constitution, U.S. Const. amend. XIV and XV ("Constitution").

5.      Specifically, Mr. Vaughan requests that the Court issue a permanent injunction prohibiting LISD, its Trustees, agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system, and a declaratory judgment declaring the current at-large system in LISD violates federal law.  This relief will ensure that Mr. Vaughan's voice and the voices of the community at large are heard and factored into the decisions affecting the fate of LISD's children.

## II.

## JULISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to:  (1) 28 U.S.C. § 1331, which grants United States district courts original jurisdiction over any civil action "arising

2

under the . . . laws . . . of the United States[,]"; (2) 28 U.S.C. § 1343(a)(3), which grants district courts original jurisdiction over any civil action to redress a deprivation of any right secured by a law of the United States "providing for the equal rights of citizens within the jurisdiction of the United States[,]"; and (3) 28 U.S.C. § 1343(a)(4), which grants district courts original jurisdiction over any civil action under "any Act of Congress providing for the protection of civil rights, including the right to vote."

7.      This Court has personal jurisdiction over LISD because the District is primarily located in Denton County, Texas, with smaller portions in Dallas County, Collin County, and Tarrant County, Texas.  This Court also has personal jurisdiction over the Board of Trustees because the seven trustees reside in Denton County, within the Eastern District.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Texas and all reside in the Eastern District.

## III.

## PARTIES

### A.      Plaintiff

9.      Mr. Vaughan is a United States citizen and registered voter who resides within the boundaries of LISD.  Mr. Vaughan is also an active member of his community and a respected Vice President of Human Resources.  Mr. Vaughan previously served as the Vice Chair of the City of Lewisville Community Development Block Grant Advisory Committee, a group dedicated to allocating funds to nonprofit organizations that directly assist Lewisville residents.  Mr. Vaughan's concern for and involvement with the community is part of his daily life.  Indeed, he set up a "Little Free Pantry" in front of his house that is stocked with food for the homeless population and others in need.

10.     Mr. Vaughan holds a deep and committed interest in the success of and equality of LISD schools.  Mr. Vaughan's son graduated from Lewisville High School, and his late wife worked for many years as a speech therapist for LISD.

11.     Mr. Vaughan has been an advocate for the interests of minority and low-income students in LISD.  In an effort to diversify LISD leadership, he supported the candidacy of David Hernandez, a Latino and a Lewisville High School graduate, in May 2018.  Notably, Mr. Hernandez received the base of his support from voters in the City of Lewisville, where more students and families of color reside.  Mr. Vaughan also attends Board meetings and requested that the Board consider transitioning to an alternate voting system, such as a single-member district voting scheme.  Mr. Vaughan wrote an article published in The Lewisville Texan Journal in April 2017, where he advocated for citizens to petition the Board to vote on creating single-member districts.

12.     It is important to Mr. Vaughan that the District take into consideration the needs and concerns of the minority students and parents in LISD.  Mr. Vaughan resides in an economically disadvantaged sector of LISD and has personally witnessed the negative effects of LISD's pervasive geographical discrimination, such as his child being denied the opportunity to take an Advanced Placement physics class – an opportunity afforded to his counterparts in the predominately Anglo high schools.

13.     In particular, Mr. Vaughan is concerned about the students who attend his neighborhood elementary school, College Street Elementary School, where only 32% of the school's students met grade level requirements across all grades and subjects tested on the State of Texas Assessments of Academic Readiness ("STAAR") exams in 2018.  Notably, in 2018 about 67% of children enrolled were economically disadvantaged and about 65% were students of color.

Without representation on the Board, the children of College Street Elementary School and similar LISD schools remain without trustees with a vital stake in the neighborhood to represent them when important decisions are made.  Instead, all such decisions will continue to be made by trustees who reside in very different neighborhoods with different interests.

14.     Mr. Vaughan knows that the at-large system leaves the needs and concerns of the vast majority of the children of LISD unaddressed.  The current electoral process denies Mr. Vaughan's friends and neighbors, African Americans, Hispanics, Asians, and other minorities, an equal opportunity to elect representatives of their choice.  Mr. Vaughan believes that the transition from the at-large voting system to either a single-member district or cumulative voting scheme will empower people of color to run for Trustee positions, inspire greater electoral participation, and lead to a more equitable system of representation.  Indeed, at a 2017 Board meeting and in a local newspaper, Mr. Vaughan requested that LISD switch to an alternate voting scheme, such as a single-member district voting system.  LISD flatly rejected his request.

**B.**     **Defendants**

15.     LISD is an Independent School District located largely in Denton County, but also in Dallas County, Collin County, and Tarrant County, and created pursuant to Texas law.  LISD may be served with process through its Superintendent, Dr. Kevin Rogers, at Lewisville Administrative Center, 1565 W. Main Street, Lewisville, Texas 75067.

16.     Kronda Thimesch is a Trustee elected to Place 1 of the Board, is the Vice President of the Board, and resides within LISD.  She may be served with process at 2516 Sir Tristram Lane, Lewisville, Texas, 75056.

17.     Allison Lassahn is a Trustee elected to Place 2 of the Board and resides within LISD.  She may be served with process at 955 Inverness Circle, Highland Village, Texas, 75077.

18.     Angie Cox is a Trustee elected to Place 3 of the Board, is the President of the Board, and resides within LISD.  She may be served with process at 7616 Emerson Lane, Flower Mound, Texas, 75022.

19.     Katherine Sells is a Trustee elected to Place 4 of the Board, is the Secretary of the Board, and resides within LISD.  She may be served with process at 2527 Merlin Drive, Lewisville, Texas, 75056.

20.     Jenny Proznik is a Trustee elected to Place 5 of the Board and resides within LISD. She may be served with process at 4578 Mira Vista Drive, Frisco, Texas, 75034.

21.     Kristi Hassett is a Trustee elected to Place 6 of the Board and resides within LISD. She may be served with process at 3500 Beringer Court, Flower Mound, Texas, 75022.

22.     Tracy Scott Miller is a Trustee elected to Place 7 of the Board and resides within LISD.  He may be served with process at 2810 Spring Hollow Court, Highland Village, Texas, 75077.

23.     All the trustees live within affluent, predominantly white neighborhoods in the cities of Flower Mound, Frisco, Lewisville, and Highland Village.  *See* Exhibit 1.  For example, two of seven trustees live in the affluent Castle Hills neighborhood, a "majestic" development zoned to the top-performing school in LISD – Castle Hills Elementary School.  Either a single-member district system or cumulative voting scheme would impede such concentration of power.  Protective of their own self-interests, the incumbent trustees have denied the community a more equitable and progressive electoral system, prompting the need for judicial intervention.

# IV.

# FACTS

## A.    The Lewisville Independent School District.

24.    LISD is primarily located in Denton County, Texas, with small portions in Dallas County, Collin County, and Tarrant County, Texas.  LISD encompasses 127-square miles and serves students from 13 municipalities including Argyle, Carrollton, Coppell, Copper Canyon, Double Oak, Flower Mound, Frisco, Grapevine, Highland Village, Hebron, Lewisville, Plano, and The Colony.  LISD, founded in 1902, has an enrollment of more than 52,000 students across more than 60 campuses.  LISD is among the largest school districts in Texas.

25.    Like many suburban school districts, LISD has experienced dramatic student demographic changes in recent years.  Consider that in the 2003-04 school year, the racial composition of the LISD student body was about 69% white, and only 12% of students came from economically disadvantaged backgrounds.  As of the 2017-18 school year, students of color comprised 58.7% of the LISD student body.  According to the Texas Education Agency ("TEA"), in 2017-18, the students enrolled in LISD were 41.3% white, 29.6% Hispanic, 14.3% Asian, and 10.7% African American.   Additionally, more than 32% of LISD's students are classified as economically disadvantaged and about 17% are English Learners.   An economically disadvantaged student is defined by the TEA as a student who is eligible for free or reduced-price lunch meals or eligible for other public assistance. English Learners are defined as students whose primary language is other than English who are in the process of acquiring English speaking skills.

## B.    LISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process.

26.    Under the current at-large election system, all voters within LISD are permitted to vote on the candidates for every Board seat. Trustees serve staggered three-year terms in positions

called "places" – which have no geographic significance.  In other words, elected trustees do not represent any specific territory or sub-district within LISD.  The at-large system discourages minority or minority-preferred candidates from seeking office because it effectively functions as a white-controlled referendum on all candidates where a bloc of white voters controls all seven Trustee positions.

27.     As a result, the Board sets District policy without the input of or participation from those communities from which the majority of students reside.  Taken together, the chilling effects of the at-large system and the obvious polarization of the white voters, the current Board fails to reflect the composition of the real stakeholders of the public-school system.

**C.**     **Affluent White Trustees Have Failed To Represent A Significant Portion of This Diverse Multiethnic, Multiracial, And Multilingual Community.**

28.     The LISD Board is responsible for overseeing and managing a system of more than 60 campuses, with an annual budget of nearly $490 million, and more than 52,000 students. Although the composition of the LISD student body has significantly diversified in recent decades, the makeup of the Board remains white, affluent, and disconnected from the diverse multiethnic, multiracial, and multilingual community that the school district serves.  The present LISD Board is comprised of seven white members who mostly reside in neighborhoods that are affluent and located at the edges of the School District rather than in the central attendance area.  *See* Exhibit 1 (Map of Lewisville Independent School District's Boundaries and Trustee Homes).  In fact, the current composition of the LISD Board is geographically, racially, and socially representative of only a narrow slice of LISD's community.  The majority of LISD students are not white, however they and their parents remain unrepresented by the at-large voting system currently utilized in LISD.

**D.**   **LISD's All White Board Fails Non-White Children.**

29.     As LISD grapples with how to address dramatic changes in its student demographics, it also faces pressing issues of poverty and inequality among students enrolled in certain LISD schools.  The LISD Board is responsible for ensuring that the District's resources are applied to meet the interests of every child within its boundaries.  Trustees are required to allocate resources in a manner that benefits all children equally – no matter the neighborhoods in which they are located.  Unfortunately, the LISD Board's fiscal and policy decisions contribute to an unacceptable performance gap between affluent, white students attending favored schools and everyone else.

30.     The impact of this perpetually monolithic Board is best measured by the inequality that exists among the District's 41 elementary schools. An achievement gap exists between the lowest performing schools in the district that are attended by children who are mostly Hispanic, poor, and learning English as a second language and those high-performing schools situated in the neighborhoods in which the all-white members of the LISD board of trustees reside. The seven trustees reside within the attendance zones of five elementary schools, all of which serve a majority white student body. In 2018, more than two-thirds of children attending schools in the trustees' neighborhoods met grade level across all subjects and grades tested.   At the highest-performing school in LISD, Castle Hills Elementary School, located in the affluent Castle Hills subdivision (where two of seven trustees live), approximately 84% of students enrolled met grade level across all grades and subjects tested.  Notably, all five schools referenced above have fewer than 10% of the students classified as economically disadvantaged, and fewer than 10% of the students are English Learners.

31.     Meanwhile, at the five lowest-performing elementary schools in LISD based on the STAAR assessment, the students enrolled are majority Hispanic and African American, and the

majority of students are economically disadvantaged.  At the lowest-performing school, Central Elementary School in Lewisville, only 19% of students met the STAAR grade level requirements across all grades and subjects in 2018.  The student body is nearly 94% Hispanic, 88% economically disadvantaged, and nearly 88% of students are English Learners.  The difference in the high performing schools in the neighborhoods where trustees reside and the lowest performing schools in LISD is stark: 67% to 84% of students at the high performing elementary schools near where trustees reside met STAAR grade level requirements across all grades and all subject areas, while only 19% to 31% of students at the five lowest performing schools in LISD met the same metric. Therefore, a 65-percentage point achievement gap exists between the top and bottom performing elementary schools. Predictably, only the top-performing elementary schools have representation on the school board in the form of not just one, *but two*, trustees. However, *no* trustees reside within attendance zones for elementary schools performing below the LISD overall district-wide average performance.

32.     This egregious achievement gap persists through every level of the LISD student experience. Although 71% of White students met grade level across all subjects and grades tested in 2018, only 43% of Hispanic students, 39% of African American students, 37% of economically disadvantaged students, and 35% of English Learners met grade level.  In fact, the gap first appears at Grade Level 3.   For Grade 3 reading in 2018, the percentage of LISD students who met grade level was 66% for white students, 36% for Hispanic students, and 30% for African American students. The gap persists as students move through the system.  Across all grades, in 2018, the reported rate of students that met grade level in reading was 73% for white students, 44% for Hispanic students, and 40% for African American students.  The story of LISD is, then, a tale of two school districts where children of color are more often left behind while their white

counterparts are being set up for success.  Such disparity between schools in the same district is not inevitable.  Action must be taken to improve conditions throughout LISD.

**E.**　**All White Board Closes The Doors On Majority-Minority Schools.**

33.　In addition to the staggering performance differences between students attending LISD schools in more affluent, majority white areas and the rest of the LISD student population, children from Hedrick Elementary and College Street Elementary schools, known to serve a majority-minority and economically disadvantaged population, have recently been forced to grapple with the Board's decision to close their schools.  The LISD Board voted unanimously to approve a $737 million bond package meant to result in the demolition of both schools – against the will of the community that the schools serve.  Now more than ever, the District needs a Board that reflects the composition of the communities it serves.

**F.**　**LISD Is Segregated By Race And Educational Outcome.**

34.　On superficial, District-wide metrics alone, LISD appears to be a racially, ethnically, and socioeconomically diverse and integrated school district.  However, a closer look at LISD elementary schools reveals a pattern of division, where many white students attend schools that are majority and affluent and are separated from the majority of LISD students who are low-income, Hispanic, and African American students.  School performance correlates heavily with poverty, and the predominantly affluent white schools outperform others in the District.

35.　In addition, the lowest-performing elementary, middle, and high schools within LISD tend to be located within LISD's namesake: the City of Lewisville.

36.　While there are five high schools in the school district, Lewisville High School and The Colony High School serve the predominantly majority-minority and lower income portions of the school district.

11

37.     Predominantly low-income and minority students are packed into one enormous, high-enrollment high school. In 2017-18, Lewisville High School, the oldest high school in LISD, enrolled an incredible 4,561 students on its three separate sprawling campuses. It should be no surprise, then, that the highest proportion of Hispanic, African American, economically disadvantaged, and English Language Learner students are packed onto this one mega-campus, which is significantly larger than the other LISD high schools. For reference, a little more than 20.7% of Lewisville High School students were white in 2017-18, and nearly 56% of students were economically disadvantaged. Lewisville High has the highest Hispanic student-population of the five high schools, Hispanic students account for 49% of the student body. Only about 55% of Lewisville High students met grade level across all subjects and grades tested in 2018, the lowest average performance of any high school in LISD. Meanwhile, Mr. Vaughan's children graduated from Lewisville High School, and he saw firsthand the unequal treatment of the high school – including a lack of access to Advanced Placement courses compared to other LISD high schools. *None* of the current seven trustees reside within the Lewisville High School boundaries or feeder pattern.

38.     Many of the lower performing schools are also located within the City of The Colony.  Similarly, no Trustee resides within the attendance zone for The Colony High School, another feeder pattern that is majority-minority in student enrollment.

39.     Indeed, the attendance area serving the more majority-minority and lower-income portions of the school district, namely the feeder elementary and middle schools for The Colony High School and Lewisville High School, remain unrepresented on the school board.

40.     Tellingly, the Trustees reside within the attendance zones for only three of the five high schools: Flower Mound, Marcus, and Hebron. The current school board reflects a voting

system by which the seven Trustees reside within wealthier portions of LISD.  In 2018, 87% of students enrolled at top-performing Flower Mound High School met grade level across all subjects and grade levels tested, reflecting a significant performance gap advantage over Lewisville High School. Notably, Flower Mound also has the lowest Hispanic enrollment of any high school, 11.6%, and the lowest percentage of economically disadvantaged students, at 3.2%.

41.     This inequitable structure leaves large swaths of the District without a voice. Because of this broken and discriminatory election system, trustees who reside in predominantly white and affluent neighborhoods wield disproportionate power in determining the fates of a school district comprised of mostly non-white students. LISD needs input from members of its community to address the complex issues such as overcrowding and lingering patterns of segregation.

42.     All citizens of voting age will find a meaningful opportunity to participate through either a single-member district structure or cumulative voting system.  The current all-white LISD elected Trustees reside in a world apart from the children attending the lowest-performing schools in LISD. This broken system of governance leaves the children who need an advocate the most without a voice on the Board as it makes decisions that steers millions of dollars in education funding and resources.

**G.     The Discriminatory Effects Of LISD's Electoral System Upon Minority Voters: LISD's De Facto Segregated Schools Are Failing.**

43.     Given the diverse makeup of LISD's Citizen Voting Age Population ("CVAP"), with people of color comprising 33.3% of the CVAP, one would expect at least one non-white candidate to be elected as a Trustee.  However, the at-large system of voting discourages African American, Hispanic, Asian, and other minority preferred candidates from running, because potential candidates know that they have no likelihood of winning.  Minority preferred candidates

13

face a white voting bloc able to bar such candidates from every seat in the District.  The control white voters wield over elected positions in government is compounded by issues such as low voter turnout and lack of a federal or state election holiday.

44.     Moreover, voting in LISD is racially polarized.  Comprising a majority of CVAP, whites vote as a distinct bloc, resulting in the defeat of minority preferred candidates for Board seats.  African Americans, Hispanics, and Asians within LISD are also a "politically unified group," who vote cohesively as a bloc when a candidate of their choice is pitted against a white candidate. Further, the African American, Hispanic, and Asian population in LISD are geographically compact.  If African American, Hispanics, and Asian eligible voters are considered together, they would constitute a majority of eligible voters in at least one properly apportioned single-member electoral district. Yet, the current at-large system promotes racial polarization, which leads to limited representation of, and ultimately, indifference to, the interests of the non-white community in LISD.

45.     This system of bloc control by white voters in LISD became evident after the May 2018 election for Lewisville ISD Trustee Place 2.  Hispanic candidate David Hernandez finished second in a three-way race, despite having strong support in large areas of Lewisville, where he was heralded by his friends and neighbors as their hope for representation on the Board. The winning candidate garnered support from the wealthier city of Flower Mound.

46.     People of color in LISD have also faced a parallel history of public and private discrimination on the basis of race and/or ethnicity in employment, education, health services, and housing.   Historical discrimination against people of color have contributed to a lower socioeconomic status, and forms of discrimination and racism against people of color exist to this

day.  This history, along with the vote dilution created by the LISD electoral system, prevent minorities from political participation on equal footing with white residents of LISD.

47.     Adequate representation in elected bodies is more important than ever given the significant non-white population in LISD.  For example, TEA data shows that between the 2003-2004 and 2017-18 school years, LISD's Hispanic student population more than doubled from 7,007 students to 15,475 students. Hispanic students comprise almost 30% of the student population in LISD.  Unfortunately, but not surprisingly given the composition of the Board and the District's leadership, teacher hiring practices in LISD have not mirrored this trend.  The percentage of Hispanic teachers in LISD is only 11%, while a disproportionate 80% of teachers are white.  Meanwhile, white student enrollment dropped from 30,066 students to 21,608 during the same time period. One would have expected to see a subsequent reflection on increasing diversity in teachers and on the school board of the District's changing demographics.

48.     Even more tellingly, the Board is tasked with the influential hiring decision of selecting the superintendent.  Furthermore, the superintendent works on an LISD "Leadership Team" that is comprised of eight white members and no people of color.  The administrators "leading" the District and making critical decisions about the multiracial and multiethnic student body fail to reflect the diverse majority-minority demographics of LISD.

49.     Overt racism in LISD continues to this day.  In February 2018, reports of racism at Marcus High School in Flower Mound surfaced after a photograph showing racial slurs and a swastika written on a school whiteboard was posted online.  This incident was reminiscent of earlier racist displays in the District.  In 2015, LISD drew negative national attention when "White Power" signs were displayed during a Flower Mound High School basketball game. The majority of students at Flower Mound High School are white, and only 3.2% of students were disadvantaged

15

in 2017-18. These actions reflect the chasm between the wealthier portion of the District and the predominantly minority schools in the District. Students of color and their families deserve better.

50.     Clearly, the legacy of the LISD electoral system is one that blocks minority political participation and impairs the success of students of color.  Specific mechanisms contributing to this problem include: (1) at-large elections for all seven seats on the Board; (2) staggered election terms; and (3) a District-wide plurality vote requirement.  There is no legitimate reason to continue along this path because the time is long overdue for LISD to adopt a system that ensures that people of color have meaningful opportunity for full and fair participation in the election process.

**H.     Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

51.     LISD's discriminatory voting system is a relic of the District's past and must be changed.  Although "at-large . . . districting schemes are not per se unconstitutional . . . where the petitioner can demonstrate that 'its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice,' . . . such districting schemes are constitutionally infirm."  *Zimmer v. McKeithen*, 485 F.2d 1297, 1304-05 (5th Cir. 1973) (internal citations omitted).

52.     Across the country and even the Dallas metro area, school districts with at-large election systems have recognized, either voluntarily or through judicial intervention, the inherent representational flaws in their voting structure and have switched to alternative voting structures, such as a single-member district system or cumulative voting system.

53.     Under single-member district elections, board seats are tethered to specific geographic area of the school district. A single-member district system vests trustees with responsibility for the interests of actual communities, ensuring that all parts of the District participate in the Board's decision-making process.

54.     Alternatively, included in the Texas Education Code, the cumulative voting structure enables each voter to cast a number of ballots, for any one or more candidates in the manner of their choosing, equal to the number of positions to be filled at the election (Tex. Educ. Code Ann. § 11.054 (b)-(c)). Through this structure, the minority population is granted access to the electoral process, and the possibility of the dilution of their votes is diminished.  Under cumulative voting, each trustee is beholden to the community on the whole.  It has the potential to promote trustees from the more disadvantaged communities within the district.

55.     Indeed, a "court could design an at-large election plan that awards seats on a cumulative basis, or by some other method that would result in a plan that satisfies the Voting Rights Act." *Branch v. Smith*, 538 U.S. 254, 309-10 (2003).

56.     The LISD electoral system violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution, and unless the Court directs LISD to design a single-member district structure or cumulative voting system that does not unlawfully dilute the votes of African American, Hispanic, and Asian voters, the current discriminatory system will persist.

## V.

## CLAIMS

### A.     Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act

57.     The allegations set forth in paragraphs 1-56 above are hereby incorporated as if fully set forth herein.

58.     Section 2 of the Voting Rights Act prohibits any standard, practice or procedure that results in the denial or abridgment of minority voting rights.  Specifically, it forbids any electoral system that denies African Americans, Hispanics, Asians, and other minority groups an

17

opportunity equal to that afforded to other members of the electorate to elect representatives of their choice.

59.     LISD's at-large electoral system for electing its Board unconstitutionally dilutes African American, Hispanic, and Asian voting strength and is not equally open to participation by LISD's non-white voters.  Further, the electoral system results in African Americans, Hispanics, and Asians having less opportunity than other LISD voters to meaningfully participate in the electoral process and to elect representatives of their choice.

60.     The African American, Hispanic, and Asian communities in LISD are sufficiently large, geographically compact, and constitute a politically unified group that votes cohesively as a bloc, such that one or more properly-apportioned single-member electoral districts can be drawn in which minorities would constitute a majority of eligible voters.

61.     LISD Board elections are characterized by racially-polarized voting in which the predominately white voting bloc votes in a way that regularly defeats the African American, Hispanic, Asian, and non-white communities' candidates of choice and has a chilling and discouraging impact on minority voter participation.  Thus, based on the totality of past and present circumstances, the LISD electoral system impermissibly dilutes the minority vote and stymies that community's ability to participate fully in the election process.

62.     Accordingly, Mr. Vaughan requests that the Court issue a declaratory judgment that the LISD electoral system violates Section 2 of the Voting Rights Act.

**B.     Count 2: Violation Of The Fourteenth And Fifteenth Amendments Of The Constitution**

63.     The allegations set forth in paragraphs 1-56 above are hereby incorporated as if fully set forth herein.

64.     LISD's at-large districting voting system deprives the African American, Hispanic, and Asian communities of equal protection of the law in violation of the Fourteenth and Fifteenth Amendments of the Constitution.

65.     The at-large system has been maintained for a discriminatory purpose and has the effect of diluting, minimizing, and canceling out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments to the Constitution.

C.     **Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution**

66.     The allegations set forth in paragraphs 1-56 above are hereby incorporated as if fully set forth herein.

67.     Unless enjoined, the LISD electoral system will remain in force and, therefore, LISD will continue to violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution by administering, implementing, and conducting future elections for Board members utilizing that unlawful system.

68.     Without the Court's intervention, the Board's actions and the electoral system will cause Hispanic and other non-white voters irreparable harm because the electoral system denies those voters the opportunity to fully participate in the electoral process by diluting the strength of their vote, for which there is no adequate remedy at law.

69.     Accordingly, Mr. Vaughan requests that the Court enter a permanent injunction prohibiting Defendants from administering, implementing, and conducting future elections for the LISD Board based on the at-large electoral system.  Such relief is authorized by the Voting Rights Act as well as principles of equity.

**D.**     **Count 4:  Request For Attorneys' Fees**

70.     The allegations set forth in paragraphs 1-56 above are hereby incorporated as if fully set forth herein.

71.     Because of LISD's unlawful electoral system, Mr. Vaughan has been required to retain the undersigned counsel to present and prosecute the claims asserted herein.

72.     This action is a suit to enforce the voting guarantees of the Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), Mr. Vaughan is entitled to recover his reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of his costs for pursuing this lawsuit.

**VI.**

**REQUEST FOR RELIEF**

In light of the foregoing, Mr. Vaughan respectfully requests that this Court enter judgment in his favor and against all Defendants, providing for the following relief:

(a)     A judicial declaration that the at-large method for electing members to the LISD Board violates Section 2 of the Voting Rights Act;

(b)     A permanent injunction prohibiting LISD, its Trustees, agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system;

(c)     A writ temporarily enjoining the Board election scheduled for May 4, 2019, from proceeding until the legality of LISD's electoral system may be adjudicated;

(d)     An order directing LISD to devise an election plan and an implementation schedule that remedies the violations of Section 2 of the Voting Rights Act

and U.S. Const. amend. XIV and XV.  If LISD fails to formulate such a plan, the Court should order into effect a new election plan of its own, designed to remedy the violations of Section 2 and U.S. Const. amend. XIV and XV, and order elections to be held pursuant to that plan as promptly as possible;

(e)     An order that all future elections for the LISD Board comply with Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV;

(f)     An award of reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), and any other applicable statute;

(g)     An award of costs of Court; and

(h)     Any other relief, at law or in equity, to which Mr. Vaughan is entitled and which this Court deems just and proper.

DATED:  February 12, 2019.                    Respectfully submitted,


**BREWER STOREFRONT, PLLC**


By: */s/ William A. Brewer III*
    William A. Brewer III
    State Bar No. 02967035
    wab@brewerattorneys.com
    Michael J. Collins
    State Bar No. 00785493
    mjc@brewerattorneys.com
    Theresa L. Melia
    State Bar No. 24099719
    tlm@brewerattorneys.com
    1717 Main Street
    Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF**

4845-8974-7846, v. 20

22