UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRANK VAUGHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LEWISVILLE INDEPENDENT SCHOOL | § | Civil Action No. 4:19-cv-00109-SDJ |
| DISTRICT, and KRONDA THIMESCH, | § | |
| ALLISON LASSAHN, ANGIE COX, | § | |
| KATHERINE SELLS, JENNY PROZNIK, | § | |
| KRISTI HASSETT, and TRACY SCOTT | § | |
| MILLER, in their official capacities, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Meredith Prykryl Walker
State Bar No. 24056487
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
105 Decker Court, Suite 600
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

Christine S. Badillo
State Bar No. 24046866
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
505 E Huntland Drive, Suite 600
Austin, Texas 78752
512.454.6864
512.467.9318 (facsimile)
cbadillo@wabsa.com

D. Craig Wood
State Bar No. 21888700
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
1020 N.E. Loop 410, Suite 450
San Antonio, Texas 78209
210.979.6633
210.979.7024 (facsimile)
cwood@wabsa.com

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Statement of the Issues ...................................................................................... 1

III.  Undisputed Facts ............................................................................................... 2

IV.  Summary Judgment Standard ........................................................................... 2

V.   Arguments and Authorities ............................................................................... 3

     A.   Plaintiff bears the burden to establish standing to pursue
         his claims against Lewisville Independent School District ........................... 3

         1.   Plaintiff does not have standing to pursue
             his claims under the Voting Rights Act .................................................. 4

         2.   Plaintiff does not have standing to pursue his claims for a
             violation of the Fourteenth and Fifteenth Amendments .......................... 4

     B.   The framework for a claim under the Voting Rights Act .............................. 5

         1.   Plaintiff combines all three minorities in
             order to satisfy the first *Gingles* precondition ........................................ 6

         2.   The Court must assess the cohesiveness of all three identified
             minority groups in analyzing the second *Gingles* precondition .............. 6

         3.   The Court should look first to endogenous elections in
             analyzing the second and third *Gingles* preconditions ........................... 7

         4.   Partisan exogenous, statewide elections are not as probative
             in analyzing the District's nonpartisan electoral system ........................ 7

     C.   The reliance on Plaintiff's election data ...................................................... 8

     D.   Plaintiff cannot satisfy the second and third *Gingles* preconditions ............. 9

         1.   Plaintiff's burden in establishing the second *Gingles* precondition ......... 9

         2.   Plaintiff's burden in establishing the third *Gingles* precondition .......... 10

         3.   Plaintiff's endogenous elections ........................................................... 10

             a.   2018 Lewisville ISD Place 2 Election ............................................ 10

      b.   2016 Lewisville ISD Place 4 Election ............................................................. 11

      c.   2014 Lewisville ISD Place 6 Election ............................................................. 11

   4.   Plaintiff's exogenous elections. .............................................................. 12

      a.   2018 Democratic Gubernatorial Primary Runoff .............................. 12

      b.   2018 Gubernatorial General Election .................................................... 12

      c.   2018 Democratic Senate Primary ......................................................... 13

      d.   2012 Presidential General Election ...................................................... 14

      e.   2008 Democratic Presidential Primary ............................................... 14

   5.   Plaintiff's election data does not demonstrate political
       cohesion between Asian, Black, and Hispanic voters
       or relevant racial bloc voting by white voters ...................................... 14

E.   Plaintiff cannot maintain his alleged constitutional claims
     under the Fourteenth and Fifteenth Amendments ........................................ 17

# TABLE OF AUTHORITIES

**CASES**

*Benavidez v. City of Irving*,
    638 F. Supp. 2d 709 (N.D. Tex. 2009) .................................................................. 5

*Benavidez v. Irving Indep. Sch. Dist.*,
    690 F. Supp. 2d 451 (N.D. 2010) ........................................................................ 6

*Brewer v. Ham*,
    876 F.2d 448 (5th Cir. 1989) .............................................................................. 7

*Campos v. City of Baytown*,
    840 F.2d 1240 (5th Cir. 1988) ......................................................................... 6, 7

*Cisneros v. Pasadena Indep. Sch. Dist.*,
    No. 4:12-CF-2579, 2014 WL 1668500 (S.D. Tex. Apr. 25, 2014) ..................... 7, 16

*Citizens for a Better Gretna v. City of Gretna*,
    834 F.2d 496 (5th Cir. 1987) .............................................................................. 7

*Cousin v. Sundquist*,
    145 F.3d 818 (6th Cir. 1998) .............................................................................. 9

*Davis v. Bandemer*,
    478 U.S. 109 (1986) .......................................................................................... 18

*Fairley v. Patterson*,
    493 F.2d 598 (5th Cir. 1974) .............................................................................. 4

*Houston N. Hosp. Props. v. Telco Leasing, Inc.*,
    680 F.2d 19 (5th Cir. 1982) ............................................................................... 2

*In re Placid Oil Co.*,
    932 F.2d 394 (5th Cir. 1991) .............................................................................. 2

*League of United Latin Am. Citizens v. Clements*,
    986 F.2d 728 (5th Cir. 1993) ............................................................................ 10

*League of United Latin Am. Citizens v. Perry*,
    548 U.S. 399 (2006) ........................................................................................... 5

*Lopez v. City of Houston*,
    No. H–09–0420, 2009 WL 1456487 (S.D. Tex. May 22, 2009) ........................ 17

*Newman v. Voinovich*,
  789 F. Supp. 1410 (S.D. Ohio 1992)....................................................................... 3

*Nunez v. Superior Oil Co.*,
  572 F.2d 1119 (5th Cir. 1978)............................................................................... 2

*Overton v. City of Austin*,
  871 F.2d 529 (5th Cir. 1989)................................................................................. 6

*Perry-Bey v. City of Norfolk*,
  678 F. Supp. 2d 348 (E.D. Va. 2009)..................................................................... 4

*Prejean v. Foster*,
  227 F.3d 504 (5th Cir. 2000)............................................................................... 17

*Reno v. Bossier Parish Sch. Bd.*,
  528 U.S. 320 (2000)............................................................................................ 17

*Rodriguez v. Harris County*,
  964 F. Supp. 2d 686 (S.D. Tex. 2013) ...................................................7, 9, 10, 17

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..................................................................................... 3, 4

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) .................................................................................5, 9, 10, 17

*Westwego Citizens for Better Gov't v. City of Westwego*,
  872 F.2d 1201 (5th Cir. 1989)............................................................................... 7

*Wright v. Dougherty County*,
  358 F.3d 1352 (11th Cir. 2004)............................................................................. 4

## OTHER SOURCES

U.S. CONST. art. III ................................................................................................ 3

iv

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Lewisville Independent School District, Kronda Thimesch, Allison Lassahn, Angie Cox, Katherine Sells, Jenny Proznik, Kristi Hassett, and Tracy Scott Miller, in their official capacities (collectively Lewisville ISD or the District) submit this Motion for Summary Judgment in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56 and, in support thereof, respectfully would show the Court as follows:

## I.      INTRODUCTION

Plaintiff filed suit against Lewisville ISD on February 12, 2019, claiming that the election of the Lewisville ISD Board of Trustees violates section 2 of the Voting Rights Act as it, according to Plaintiff, "effectively denies membership and representation to Hispanics and other people of color." (Dkt. 1, ¶2). While Plaintiff seeks relief under section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments, he lacks standing to bring such claims on behalf of his identified minority groups—Asians, Blacks, and Hispanics. And even if Plaintiff has standing, his claims still fail as Plaintiff cannot meet his threshold burden for establishing a vote dilution claim. The Court should dismiss Plaintiff's Complaint and the claims contained therein accordingly.

## II.     STATEMENT OF THE ISSUES

1.      Does Plaintiff have standing to pursue his claims under section 2 of the Voting Right Act and the Fourteenth and Fifteenth Amendments of the Constitution?

2.      Can Plaintiff satisfy the second *Gingles* precondition (*i.e.*, political cohesion of the minority voters)?

3.      Can Plaintiff satisfy the third *Gingles* precondition (*i.e.*, white majority bloc voting)?

4.      Can Plaintiff maintain his claims under the Fourteenth and Fifteenth Amendments?

1

### III.     UNDISPUTED FACTS

The Lewisville ISD Board of Trustees consists of seven members elected by Place. (Def. App. 001). Board elections take place in May on the uniform election date with the election for Places 1 and 2 conducted together, the election for Places 3, 4, and 5 conducted together, and the election for Places 6 and 7 conducted together. (Def. App. 001). Trustees are elected on an at-large basis based on a plurality of the vote. (Def. App. 001).

### IV.     SUMMARY JUDGMENT STANDARD

"As a matter of federal procedural law, the granting of summary judgment under Fed. R. Civ. P. 56 is appropriate when, viewed in light most favorable to the opposing party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."[1] However, in a bench trial when there is no jury to hear factual disputes, the Court may, in some instances, issue a ruling on the merits despite the existence of a material fact.[2] To that end, the Fifth Circuit has explained as follows:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, or, as is the case here, that delay under the circumstances proved is justified or unjustified, even if that conclusion is deemed "factual" or involves a "mixed question of fact and law." A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.[3]

---

[1] *Houston N. Hosp. Props. v. Telco Leasing, Inc.*, 680 F.2d 19, 22 (5th Cir. 1982).
[2] *See id.*; *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-25 (5th Cir. 1978); *In re Placid Oil Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991).
[3] *Nunez*, 572 F.2d at 1123-25.

As such, Lewisville ISD believes this matter is appropriate for a dispositive disposition. The District moves for summary judgment accordingly.

## V.     ARGUMENTS AND AUTHORITIES

**A.     Plaintiff bears the burden to establish standing to pursue his claims against Lewisville Independent School District.**

The United States Constitution "endows the federal courts with '[t]he judicial Power of the United States.'"[4] While not defined, the Constitution specifies that the judiciary's "judicial Power" extends only to "Cases" and "Controversies," giving rise to the doctrine of standing in federal courts, which limits "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong".[5] In order to establish standing, Plaintiff must prove (1) he has suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision.[6]

In the context of a Voting Rights Act lawsuit, this means Plaintiff bears the burden to demonstrate that

> (1) he has personally suffered or will suffer some distinct injury-in-fact as a result of [the District's] putatively illegal conduct; (2) the injury can be traced with some degree of causal certainty to [the District's] conduct; (3) the injury is likely to be redressed by the requested relief; (4) [P]laintiff must assert his own legal rights and interests, not those of a third party; (5) the injury must consist of more than a generalized grievance that is shared by many; and (6) [P]laintiff's complaint must fall within the zone of interests to be regulated or protected by the rule of law in question.[7]

In *Newman*, the district court determined the plaintiff—a white individual—had no standing "to advance the rights and interests of the minority population."[8] This is consistent with Fifth Circuit

---

[4] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016) (citing U.S. CONST. art. III, § 1).
[5] *Id.* at 1547 (citing U.S. CONST. art. III, § 2).
[6] *Id.* at 1547.
[7] *Newman v. Voinovich*, 789 F. Supp. 1410, 1415 (S.D. Ohio 1992); *Spokeo*, 136 S. Ct. at 1547 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [standing].").
[8] *Newman*, 789 F. Supp. at 1416.

3

precedent holding that an individual who has benefitted from a "malapportioned voting district[]" does not meet the "injury in fact" test for standing.[9]

1. **Plaintiff does not have standing to pursue his claims under the Voting Rights Act.**

Upon information and belief, Plaintiff is not a member of any minority group he seeks to advocate for in his lawsuit (*i.e.*, Asian, Black, or Hispanic); rather, Plaintiff is white. This is evidenced by Plaintiff's allegation that "[t]he current electoral process denies [Plaintiff's] friends and neighbors"—not Plaintiff—"an equal opportunity to elect representatives of their choice." (Dkt. 1, ¶14). This is insufficient for Plaintiff to meet his burden to establish standing under the Voting Rights Act as Plaintiff has not suffered an injury in fact as Plaintiff is not asserting his own legal rights; rather, he is asserting the interests of third parties.[10] The Court should dismiss Plaintiff's Voting Rights Act claim accordingly.[11]

2. **Plaintiff does not have standing to pursue his claims for a violation of the Fourteenth and Fifteenth Amendments.**

For the same reasons, Plaintiff does not have standing to maintain his claims for a violation of the Fourteenth and Fifteenth Amendments. More specifically, Plaintiff is seeking to undo an electoral system that allegedly deprives Asians, Blacks, and Hispanics of equal protection of the law. But as noted above, upon information and belief, Plaintiff is not an Asian, Black, or Hispanic minority; rather, he is white. As such, Plaintiff lacks standing to pursue his constitutional claims because he has not suffered an injury in fact.[12] It follows that Plaintiff's constitutional claims are

---

[9] *Fairley v. Patterson*, 493 F.2d 598, 603-04 (5th Cir. 1974); *Wright v. Dougherty County*, 358 F.3d 1352, 1355-56 (11th Cir. 2004) (discussing and applying *Fairley*).

[10] *See Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) (finding the plaintiff lacked standing because she failed to allege she was "a member of a minority whose voting strength was diluted" as a result of the at-large election system).

[11] Plaintiff Frank Vaughan is the only plaintiff in this suit, and, notably, pursuant to the Court's scheduling order, the deadline to add parties has passed. (Dkt. 23).

[12] *Spokeo*, 136 F. Ct. at 1547.

subject to dismissal.[13]

## B.    The framework for a claim under the Voting Rights Act.

Plaintiff asserts Lewisville ISD's "at-large electoral system for electing its Board [members] unconstitutionally dilutes [Black], Hispanic, and Asian voting strength" in violation of section 2 of the Voting Rights Act. (Dkt. 1, ¶¶58-59). Under Supreme Court precedent, there are three threshold conditions for establishing a section 2 violation:

    (1)    the minority group is sufficiently large and geographically compact to constitute a majority in a single member district;

    (2)    the minority group is politically cohesive; and

    (3)    the majority votes sufficiently as a bloc to enable it in the absence of special circumstances, usually to defeat the minority group's preferred candidate.[14]

The "[f]ailure to establish any one of the *Gingles* factors by a preponderance of the evidence precludes a finding of vote dilution, because '[t]hese circumstances are necessary preconditions for multimember districts to operate to impair minority voters' ability to elect representatives of their choice.'"[15]

If Plaintiff can establish all three of the *Gingles* preconditions, the Court then looks to the totality of the circumstances "to determine whether members of a racial group have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[16] Here, Lewisville ISD limits its Motion for Summary Judgment to the second and third *Gingles* preconditions. In so limiting its motion, the District does not concede that Plaintiff can establish the first *Gingles* precondition by a preponderance of the evidence, nor does Lewisville ISD concede that the totality of the circumstances weigh in favor of

---

[13] As noted above, the deadline for Plaintiff to add parties to this matter has passed. (Dkt. 23).

[14] *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986).

[15] *Benavidez v. City of Irving*, 638 F. Supp. 2d 709, 712 (N.D. Tex. 2009) (quoting *Gingles*, 478 U.S. at 50).

[16] *Id.* (citing *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425-26 (2006)).

a violation of section 2 of the Voting Rights Act.

### 1. Plaintiff combines all three minorities in order to satisfy the first *Gingles* precondition.

In order to establish the first *Gingles* precondition, Plaintiff "must establish that there is a potential single member district (the 'demonstration district') in which a majority of the CVAP [Citizens of Voting Age Population] is [a member of a minority group]."[17] Standing alone, none of Plaintiff's identified minority groups—Asian, Black, or Hispanic—are numerous enough to form a demonstration district that is 50 percent of the voting age population.[18] (Def. App. 006, 008). As such, Plaintiff has combined all three identified minorities groups to create a demonstration district that has a combined CVAP of 54 percent. (Def. App. 008).

### 2. The Court must assess the cohesiveness of all three identified minority groups in analyzing the second *Gingles* precondition.

Because Plaintiff combines the Asian, Black, and Hispanic voters for purposes of his demonstration district to satisfy the first *Gingles* precondition, it is axiomatic that the cohesion analysis looks to whether Asian, Black, and Hispanic voters are politically cohesive for purposes of the second *Gingles* precondition.[19] To make this showing, Plaintiff must demonstrate "that the minorities so identified actually vote together and are impeded in their ability to elect their own candidates by all of the circumstances, including especially the bloc voting of a white majority that usually defeats the candidate of the minority."[20] As the Fifth Circuit has explained,

> [t]he proper standard is . . . whether the minority group together votes in a cohesive manner for the minority candidate. That can be done by examining elections when there was a minority candidate. The key is the minority group as a whole. Of course, if one part of the group cannot be expected to vote with the other part, the combination is not cohesive. If the evidence were to show that Blacks vote against

---

[17] *Benavidez v. Irving Indep. Sch. Dist.*, 690 F. Supp. 2d 451, 456 (N.D. 2010).
[18] *Id.*
[19] *See Overton v. City of Austin*, 871 F.2d 529, 535-36 (5th Cir. 1989); *Campos v. City of Baytown*, 840 F.2d 1240, 1244 (5th Cir. 1988).
[20] *Campos*, 840 F.2d at 1244.

a Hispanic candidate, or vice versa, then the minority group could not be said to be cohesive. But if the statistical evidence is that Blacks and Hispanics together vote for the Black or Hispanic candidate, then cohesion is shown.[21]

In other words, to satisfy the second *Gingles* precondition, Plaintiff must establish Black-supported candidates receive a majority of the Asian and Hispanic vote; Hispanic-supported candidates receive a majority of the Asian and Black vote; and Asian-supported candidates receive a majority of Black and Hispanic vote.[22]

   **3.   The Court should look first to endogenous elections in analyzing the second and third *Gingles* preconditions.**

   In analyzing the second and third *Gingles* preconditions, the Court has the opportunity to analyze election results from endogenous elections (*i.e.*, "contests within the jurisdiction and for the particular office that is at issue") and exogenous elections (*i.e.*, elections "within the same geography, thus involving the same electorate, but for different types of elections").[23] While the analysis of endogenous elections is probative in vote dilution cases, endogenous elections should not replace exogenous elections; rather, exogenous elections should serve only as a supplement.[24] It follows that the Court should not rely on exogenous elections as the only evidence to establish the second and third *Gingles* preconditions.[25]

   **4.   Partisan exogenous, statewide elections are not as probative in analyzing the District's nonpartisan electoral system.**

   To establish the second and third *Gingles* preconditions, Plaintiff relies on the following

---

[21] *Id.* at 1245 (internal citations omitted). *See also Brewer v. Ham*, 876 F.2d 448, 453 (5th Cir. 1989).

[22] *Brewer*, 876 F.2d at 453.

[23] *Rodriguez v. Harris County*, 964 F. Supp. 2d 686, 759 (S.D. Tex. 2013); *Cisneros v. Pasadena Indep. Sch. Dist.*, No. 4:12-CF-2579, 2014 WL 1668500, at *21 (S.D. Tex. Apr. 25, 2014).

[24] *Rodriguez*, 964 F. Supp. 2d at 759 (citing *Westwego Citizens for Better Gov't v. City of Westwego*, 872 F.2d 1201, 1209 n.11 (5th Cir. 1989)).

[25] *Cisneros*, 2014 WL 1668500, at *23; *Citizens for a Better Gretna v. City of Gretna*, 834 F.2d 496, 502 (5th Cir. 1987) ("Although exogenous elections alone could not prove racially polarized voting in Gretna aldermanic elections, the district court properly considered them as additional evidence of bloc voting—particularly in light of the sparsity of available data.").

endogenous and exogenous elections:

- 2018 Lewisville ISD Place 2 Election (Def. App. 082);

- 2016 Lewisville ISD Place 4 Election (Def. App. 084);

- 2014 Lewisville ISD Place 6 Election (Def. App. 084);

- 2018 Democratic Gubernatorial Primary Runoff (Def. App. 086);

- 2018 Gubernatorial General Election (Def. App. 086);

- 2018 Democratic Senate Primary (Def. App. 087);

- 2012 Presidential General Election (Def. App. 088); and

- 2008 Democratic Presidential Primary (Def. App. 089).

The exogenous elections Plaintiff relies upon are for full-time, salaried, statewide or nationwide positions. (Def. App. 112). Moreover, the 2018 Gubernatorial General Election and the 2012 Presidential General Election take place during the November election and involve candidates at the top of the ballots vying for a statewide or nationwide office based on the candidates' partisan affiliations, which often times involves straight ticket voting. (Def. App. 112-113). In contrast, the Lewisville ISD Board of Trustees elections typically occur in May, without primaries and without the influence of straight ticket voting given the nonpartisan nature of the positions. (Def. App. 112-113). The Court should weigh Plaintiff's proffered exogenous elections accordingly.

## C.  The reliance on Plaintiff's election data.

Solely for purposes of the District's Motion for Summary Judgment, Lewisville ISD relies on the election data provided by Plaintiff's experts, David Ely and Dr. Kenneth Mayer. (Def. App. 002-110). Lewisville ISD, however, does contest the conclusions Mr. Ely and Dr. Mayer draw from that data, but the disagreement with those conclusions does not defeat the District's Motion for Summary Judgment as the District believes the data, on its face, establishes Plaintiff cannot

meet the second and third *Gingles* preconditions. Moreover, in relying on Mr. Ely's and Dr. Mayer's data, Lewisville ISD does not waive its ability to contest or otherwise refute their data, conclusions, and expert opinions at trial.

**D.     Plaintiff cannot satisfy the second and third *Gingles* preconditions.**

As outlined above, in order to establish a violation of the Voting Rights Act, Plaintiff must establish that Asian, Black, and Hispanic voters are politically cohesive and that white voters vote sufficiently as a bloc to enable them to defeat the minority groups' preferred candidate.[26] Plaintiff cannot make this showing, however, because there is no consistent cohesion among the three identified minority groups, much less evidence that, when the three minority groups do coalesce on rare occasion, that white voters vote as a bloc to defeat their preferred candidate of choice.

**1.     Plaintiff's burden in establishing the second *Gingles* precondition.**

In analyzing the second *Gingles* precondition, the question for the Court is whether the identified minorities—Asian, Black, and Hispanic—"share[] the same beliefs, ideals, principles, agendas, and concerns, 'such that they generally unite behind or coalesce around particular candidates and issues.'"[27] In other words, the inquiry with respect to minority political cohesion "asks merely whether voters of the same race tend to vote alike."[28] As applied here, if Asian, Black, and Hispanic voters are not politically cohesive (*i.e.*, they do not share a candidate of choice), "then it cannot be said that the selection of the electoral structure employed by [Lewisville ISD] thwarts distinctive minority group interests."[29] Plaintiff, however, cannot meet his burden of proof to establish that the minority candidates in the elections his expert analyzed are "actually [the]

---

[26] *Gingles*, 478 U.S. at 50-51.
[27] *Rodriguez*, 964 F. Supp. 2d at 754.
[28] *Cousin v. Sundquist*, 145 F.3d 818, 823 (6th Cir. 1998).
[29] *Rodriguez*, 964 F. Supp. 2d at 754.

minority-preferred" candidates.[30]

### 2.    Plaintiff's burden in establishing the third *Gingles* precondition.

The third *Gingles* precondition exists when "white voters favor and vote for certain candidates or propositions, and minority voters vote for other candidates or propositions."[31] In simpler terms, racial bloc voting exists when white voters and, here, Asian, Black, and Hispanic voters, vote differently.[32] In order for Plaintiff to make this showing, he must demonstrate "a substantial majority of white voters consistently vote against the candidates preferred by minority voters, such that the candidates preferred by the minority group usually lose."[33] When this analysis is performed in conjunction with the second *Gingles* precondition, Plaintiff's inability to meet his burden of proof on the third *Gingles* precondition becomes clearly evident.

### 3.    Plaintiff's endogenous elections.

### a.    2018 Lewisville ISD Place 2 Election

According to Dr. Mayer, the May 2018 Lewisville ISD Place 2 Election yielded the following results:

| May 2018 Lewisville ISD Place 2[34] | | | | |
|---|---|---|---|---|
| **Candidate** | **Latino** | **Black** | **Asian** | **White** |
| **Hernandez** Hispanic | **54.0%** | **69.8%** | **37.8%** | **26.8%** |
| **Riemenschneider** White | **23.3%** | **14.2%** | **30.0%** | **26.3%** |
| **Lassahn (winner)** White | **22.7%** | **15.9%** | **32.0%** | **46.9%** |

---

[30] *Id.* at 754-55.
[31] *League of United Latin Am. Citizens v. Clements*, 986 F.2d 728, 744 (5th Cir. 1993).
[32] *Gingles*, 478 U.S. at 53 n.21.
[33] *Clements*, 986 F.2d at 746.
[34] The results for this election are found in Table 8 of Dr. Mayer's report. (Def. App. 083). To aid the Court in the review of the information provided by Dr. Mayer, Lewisville ISD has shaded the tables in color to reflect candidate preference. As such, the information is best viewed electronically or when printed in color. The District has provided courtesy copies of its Motion for Summary Judgment to the Court accordingly.

The District recognizes Asian, Black, and Hispanic[35] voters coalesced around David Hernandez, the Hispanic candidate. (Def. App. 082-083).

### b.     2016 Lewisville ISD Place 4 Election

According to Dr. Mayer, the May 2016 Lewisville ISD Place 4 Election yielded the following results:

| May 2016 Lewisville ISD Place 4[36] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Adams**<br>Asian | **46.7%** | **42.2%** | **57.4%** | **17.4%** |
| **Sells (winner)**<br>White | **53.3%** | **57.8%** | **42.6%** | **82.6%** |

Here, Hispanic and Black voters did not support Fairooz Adams, the Asian candidate, thereby demonstrating a lack of cohesion among the three minority groups. (Def. App. 084).

### c.     2014 Lewisville ISD Place 6 Election

According to Dr. Mayer, the May 2014 Lewisville ISD Place 6 Election yielded the following results:

| May 2014 Lewisville ISD Place 6[37] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Smith**<br>Black | **30.2%** | **38.7%** | **29.5%** | **15.0%** |
| **Hassett (winner)**<br>White | **34.1%** | **23.9%** | **36.2%** | **51.7%** |
| **Stone**<br>White | **35.6%** | **37.4%** | **34.3%** | **33.3%** |

Here, Hispanic voters supported Krista Stone, a white candidate; Black voters supported Mary Smith, the Black candidate; and Asian voters supported Kristi Hassett, a white candidate, thereby

---

[35] Dr. Mayer's report reflects the term "Hispanic" and "Latino" are interchangeable. (Def. App. 071). While Dr. Mayer prefers to use the term "Latino," the District employs the term "Hispanic" as that is the term Plaintiff chose to use almost exclusively in his Complaint. (Dkt. 1).

[36] The results for this election are found in Table 10 of Dr. Mayer's report. (Def. App. 084).

[37] The results for this election are found in Table 12 of Dr. Mayer's report. (Def. App. 085).

demonstrating a lack of cohesion among the three minority groups. (Def. App. 084-085).

### 4.    Plaintiff's exogenous elections.

#### a.    2018 Democratic Gubernatorial Primary Runoff

According to Dr. Mayer, the June 2018 Democratic Gubernatorial Primary Runoff yielded the following results:

| June 2018 Democratic Gubernatorial Primary[38] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| Valdez (winner)<br>Hispanic | 57.5% | 71.2% | 55.3% | 48.2% |
| White<br>White | 42.5% | 28.8% | 44.7% | 51.8% |

The District recognizes Asian, Black, and Hispanic voters coalesced around Lupe Valdez, the Hispanic candidate. (Def. App. 086). And while white candidate White received the majority of white voters' votes, those votes did not prevent the candidate of choice for the three identified minority groups from winning the election.

#### b.    2018 Gubernatorial General Election

According to Dr. Mayer, the November 2018 Gubernatorial General Election yielded the following results:

| November 2018 Gubernatorial Election – 2 Party Vote[39] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| Valdez<br>Hispanic | 75.1% | 81.2% | 70.7% | 28.5% |
| Abbott (winner)<br>White | 24.9% | 18.8% | 29.3% | 71.5% |

The District recognizes Asian, Black, and Hispanic voters coalesced around Lupe Valdez, the Hispanic candidate. (Def. App. 087).

---

[38] The results for this election are found in Table 14 of Dr. Mayer's report. (Def. App. 086).
[39] The results for this election are found in Table 16 of Dr. Mayer's report. (Def. App. 087).

c.     2018 Democratic Senate Primary

According to Dr. Mayer, the March 2018 Democratic Senate Primary yielded the following results:

| March 2018 Democratic Senate Primary[40] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Hernandez** Hispanic | 43.6% | 34.1% | 32.4% | 10.6% |
| **O'Rourke (winner)** White | 24.7% | 48.6% | 39.7% | 83.8% |
| **Kimbrough** Black | 31.7% | 17.4% | 27.9% | 5.70% |

Here, Hispanic voters supported Sema Hernandez, the Hispanic candidate, whereas Asian and Black voters coalesced around Beto O'Rourke, the white candidate, thereby demonstrating a lack of cohesion among the three minority groups. (Def. App. 087-088). Notably, the Black voters did not support Edward Kimbrough, the Black candidate. (Def. App. 087-088).

In an attempt to show cohesion for the minority candidates in general, Dr. Mayer combined the election results for Hispanic candidate Hernandez and Black candidate Kimbrough as follows:

| March 2018 Democratic Senate Primary[41] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Minority Candidates** Black and Hispanic | 64.5% | 54.4% | 48.3% | 17.3% |
| **O'Rourke (winner)** White | 35.5% | 45.6% | 51.7% | 82.7% |

Even then, however, Asian, Black, and Hispanic voters do not coalesce around the same candidate as the candidate of choice for Asian voters remains white candidate O'Rourke with Hispanic and Black voters preferring the minority candidates in general.

---

[40] The results for this election are found in Table 18 of Dr. Mayer's report. (Def. App. 088).
[41] The results for this election are found in Table 19 of Dr. Mayer's report. (Def. App. 088).

        d.       **2012 Presidential General Election**

According to Dr. Mayer, the 2012 Presidential Election yielded the following results:

| 2012 Presidential Election – 2 Party Vote[42] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Romney (winner in District)** | **26.3%** | **16.0%** | **36.1%** | **77.7%** |
| White | 1.1 | 0.7 | 1.0 | 0.1 |
| **Obama (winner of election)** | **73.7%** | **84.0%** | **63.9%** | **22.3%** |
| Black | 1.1 | 0.7 | 1.0 | 0.1 |

The District recognizes Asian, Black, and Hispanic voters coalesced around Barack Obama, the Black candidate. (Def. App. 089).

        e.       **2008 Democratic Presidential Primary**

According to Dr. Mayer, the March 2008 Democratic Presidential Primary yielded the following results:

| March 2008 Democratic Presidential Primary[43] | | | | |
|---|---|---|---|---|
| Candidate | Latino | Black | Asian | White |
| **Obama (winner)** | **42.1%** | **65.3%** | **58.1%** | **55.5%** |
| Black | 1.2 | 0.7 | 1.1 | 0.2 |
| **Clinton** | **57.9%** | **34.7%** | **41.9%** | **44.5%** |
| White | 1.2 | 0.7 | 1.1 | 0.2 |

Here, Asian and Black voters coalesced around Black candidate Obama, but the candidate of choice for Hispanic voters was white candidate Hillary Clinton, thereby demonstrating a lack of cohesion among the three identified minority groups. (Def. App. 089).

        **5.**       **Plaintiff's election data does not demonstrate political cohesion between Asian, Black, and Hispanic voters or relevant racial bloc voting by white voters.**

The easiest way to disprove Plaintiff's allegations in this matter is by charting the elections as follows, thereby allowing the Court to draw inferences on the data, which, for purposes of Lewisville ISD's Motion for Summary Judgment, is undisputed.

---

[42] The results for this election are found in Table 21 of Dr. Mayer's report. (Def. App. 089).
[43] The results for this election are found in Table 23 of Dr. Mayer's report. (Def. App. 089).

| Election | Minority Cohesion for Asian, Black, and Hispanic Voters | White Bloc Voting to Prevent Minority Preferred Candidate | Notes about the Election |
|---|---|---|---|
| 2018 Lewisville ISD Place 2 Election | X | X[44] | |
| 2016 Lewisville ISD Place 4 Election | | | |
| 2014 Lewisville ISD Place 6 Election | | | |
| June 2018 Democratic Gubernatorial Primary | X | | Hispanic candidate Valdez won |
| June 2018 Gubernatorial General Election | X | X | Partisan Election |
| March 2018 Democratic Senate Primary | | | |
| 2012 Presidential General Election | X | X | Partisan Election<br><br>Black candidate Obama won |
| 2008 Democratic Presidential Primary | | | |

In other words, out of the eight elections analyzed by Plaintiff's expert, only four of those elections resulted in minority cohesion such that Asian, Black, and Hispanic voters all coalesced around the same candidate. But in only three of those elections did white voters vote as a bloc preventing the preferred minority candidate from winning the election.[45] This is hardly sufficient for Plaintiff to meet his burden.

This becomes more clear when the Court considers that the nature of the two partisan

---

[44] Only 46.9 percent of the white voters voted for white candidate Lassahn who won the election. (Def. App. 083). But Lewisville ISD will assume solely for purposes of this exercise this constitutes white racial bloc voting.

[45] As discussed further below, the Court cannot overlook the fact that what appears to be white bloc voting in the June 2018 Gubernatorial General Election and the 2012 Presidential General Election is actually explained by the partisan nature of these particular elections. Regardless of whether the Court finds these two elections probative in deciding Plaintiff's section 2 claim, Lewisville ISD will assume, solely for purposes of its Motion for Summary Judgment, that these two elections demonstrate white bloc voting, but does not otherwise waive its right to contest this point at trial.

elections (*i.e.*, the June 2018 Gubernatorial General Election and 2012 Presidential General Election) are so far outside the bounds of being comparable in this instance that the Court should disregard the elections as probative. As addressed above, both identified exogenous elections occur during even years on the November ballot with candidates vying for statewide (Texas Governor) or nationwide (President) offices based on their partisan affiliation. While Plaintiff wants to attribute the voting preference in these two elections to race, the reality is the voting preferences are dictated by partisan preference. (Def. App. 113).

Moreover, Plaintiff's choice of the 2012 Presidential General Election wholly fails to acknowledge that the preferred candidate of the three identified minorities—President Obama— won the general election given the role of the Electoral College thereby rendering the 2012 Presidential General Election wholly inapposite to a Lewisville ISD school board election. (Def. App. 112). In short, the June 2018 Gubernatorial General Election and 2012 Presidential General Election lack similarity to the Lewisville ISD Board of Trustees in one critical respect—the partisan versus nonpartisan nature of the elections.[46]

When the June 2018 Gubernatorial General Election and 2012 Presidential General Election are removed from the equation, Plaintiff is left with six elections, only one of which reflects cohesion among Asian, Black, and Hispanic voters and a bloc of white voters voting for the winning candidate. In other words, on the basis of the data set forth by Plaintiff's expert, Plaintiff cannot establish the second or third *Gingles* preconditions as the minority voters do not consistently coalesce around the same candidate. Indeed, when the non-probative partisan elections are removed from the Court's analysis, Plaintiff is left with one election satisfying both *Gingles* preconditions. But the "[s]ection 2 analysis is concerned with more than the results of any

---

[46] *See Cisneros*, 2014 WL 1668500, at *22 (finding the results of the "partisan exogenous elections cannot be used to overcome the evidence supplied by the nonpartisan endogenous elections").

individual results."[47]

Indeed, as the district court in *Rodriguez* explained, "the results of a couple of elections do not discount the presence of racial bloc voting."[48] It logically follows that minority cohesion and white bloc voting in a single election does not suffice for Plaintiff to meet his burden with respect to the second and third *Gingles* preconditions given that "[a] pattern of racial bloc voting that extends over a period of time is more probative of a claim that a district experiences legally significant polarization than are the results of a single election."[49] The Court should dismiss Plaintiff's vote dilution claim under section 2 of the Voting Rights Act accordingly.

**E.      Plaintiff cannot maintain his alleged constitutional claims under the Fourteenth and Fifteenth Amendments.**

Plaintiff's inability to maintain his vote dilution claim under section 2 of the Voting Rights Act forecloses his constitutional claims under the Fourteenth and Fifteenth Amendments as a matter of law.[50] More specifically, because section 2 of the Voting Rights Act provides "greater" and "more" protection than the Fourteenth and Fifteenth Amendments with respect to challenging a voting practice, it follows that a voting practice that does not violate section 2, likewise, does not violate the Fourteenth and Fifteenth Amendments.[51] As such, Plaintiff's constitutional claims under the Fourteenth and Fifteenth Amendments are subject to dismissal.

Assuming *arguendo* that Plaintiff can maintain his section 2 claim against Lewisville ISD, Plaintiff's claim under the Fifteenth Amendment is still subject to dismissal as "the Supreme Court has rejected application of the Fifteenth Amendment to vote dilution causes of action."[52] Plaintiff's

---

[47] *Rodriguez*, 964 F. Supp. 2d at 759.
[48] *Id.* at 760.
[49] *Gingles*, 478 U.S. at 57.
[50] *Lopez v. City of Houston*, No. H–09–0420, 2009 WL 1456487, at *18 (S.D. Tex. May 22, 2009).
[51] *Id.*
[52] *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000). *See also Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000) ("Even if § 5 did not have a different baseline than the Fifteenth Amendment, appellants' argument that § 5 should be read in parallel with the Fifteenth Amendment would fail for the simple reason that we have never held

claim under the Fourteenth Amendment suffers the same fate as Plaintiff has no evidence of intentional discrimination against his three identified minority groups—Asians, Blacks, and Hispanics.[53] To that end, to succeed on his Equal Protection claim under the Fourteenth Amendment, Plaintiff must "prove both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group."[54] Plaintiff, however, does not have any evidence that Lewisville ISD implemented its at-large election system in an effort to discriminate against Asians, Blacks, and Hispanics, thereby subjecting Plaintiff's Fourteenth Amendment claim to dismissal.

Respectfully Submitted,

By:    /s/ Meredith Prykryl Walker
        Meredith Prykryl Walker
        State Bar No. 24056487
        D. Craig Wood
        State Bar No. 21888700
        Christine S. Badillo
        State Bar No. 24046866

Meredith Prykryl Walker
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
105 Decker Court, Suite 600
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

---

that vote dilution violates the Fifteenth Amendment. Indeed, contrary to Justice SOUTER's assertion . . . we have never even 'suggested' as much.") (internal citations omitted).
[53] *See Davis v. Bandemer*, 478 U.S. 109, 127 (1986).
[54] *Id.*

D. Craig Wood
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
1020 N.E. Loop 410, Suite 450
San Antonio, Texas 78209
210.979.6633
210.979.7024 (facsimile)
cwood@wabsa.com

Christine S. Badillo
WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
505 E Huntland Drive, Suite 600
Austin, Texas 78752
512.454.6864
512.467.9318 (facsimile)
cbadillo@wabsa.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On November 22, 2019, I electronically submitted the foregoing document with the clerk of court for the United States District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

William A. Brewer III
Michael J. Collins
Donna Zinke Cowman
Brewer Storefront, PLLC
1717 Main Street, Suite 5900
Dallas, Texas 75201

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker