UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRANK VAUGHAN | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-109-SDJ |
| | § | |
| LEWISVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

**MEMORANDUM OPINION & ORDER**

Frank Vaughan has been an active member of the Lewisville, Texas community for years. During that time, he has been particularly interested in the Lewisville Independent School District ("LISD"), from which his children graduated and where his late wife worked for many years. Specifically, he is concerned that certain geographic segments of LISD, located in areas that he claims are primarily comprised of economically disadvantaged and minority students, suffer from a lack of representation on the LISD Board of Trustees. Vaughan attributes the lack of representation to the at-large electoral system currently employed by LISD, which he claims denies equal voting opportunity to minority groups.

Following unsuccessful efforts to convince LISD's Board of Trustees to transition to single-member voting districts, Vaughan filed this lawsuit seeking declaratory and injunctive relief, asserting that LISD's at-large electoral system runs afoul of section 2 of the Voting Rights Act ("VRA") and the Fourteenth and the Fifteenth Amendments. Vaughan specifically claims that LISD's at-large electoral

1

system impermissibly affords "African Americans, Hispanics, and Asians . . . less opportunity than other LISD voters to meaningfully participate in the electoral process and to elect representatives of their choice." (Dkt. #1 ¶ 59). The problem is that Vaughan, a white male voter, is not a member of any of these minority groups.

For this reason, LISD filed its summary-judgment motion arguing that Vaughan cannot establish an injury in fact under Article III and therefore lacks standing to pursue his claims. (Dkt. #40). LISD further argues that, even if Vaughan has standing, his claims fail because there is no genuine issue of material fact that Vaughan cannot meet certain threshold conditions for establishing a section 2 violation under *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). Vaughan filed a response, (Dkt. #45), to which LISD replied, (Dkt. #48). Vaughan also submitted an additional sur-reply. (Dkt. #53). The Court, having considered the parties' briefing, the record, and the applicable law, concludes that Vaughan lacks standing to bring this lawsuit. The Court will therefore **GRANT** the summary-judgment motion and **DISMISS** this case for lack of jurisdiction.[1]

## I.

The LISD Board of Trustees is responsible for oversight, finances, and management of over 60 school campuses within LISD, servicing over 52,000 students. The Board of Trustees is comprised of seven trustees, who are elected to their

---

[1] Because the Court concludes that Vaughan lacks standing to pursue any of his claims, it does not reach LISD's summary-judgment arguments on the merits of the claims.

positions, which are not tied to a geographic location, in staggered three-year terms. (Dkt. #45 at 2–3). Each trustee is elected on an at-large basis based on a plurality of the vote, meaning that all eligible voters across LISD may vote in every Board of Trustees election. (Dkt. #45 at 3).

LISD is racially diverse. Vaughan alleges that "people of color" make up 33.3% of the voting-age population and, of the student population, 29.6% are Hispanic, 14.3% are Asian, and 10.7% are African American. (Dkt. #1 ¶¶ 25, 43). Though the complaint focuses on a myriad of alleged inequities suffered by minority and economically disadvantaged students that Vaughan attributes to a lack of representation by the purportedly affluent, all-white Board of Trustees currently in place, Vaughan also alleges that the minority vote is diluted because of racially polarized voting. Vaughan contends that African American, Hispanic, and Asian voters are geographically compact and a "politically unified group," but that because a majority of the citizens of voting age in LISD are white and vote as a distinct bloc, the minority vote is diluted such that minorities cannot successfully elect their candidate of choice in an at-large electoral system. (Dkt. #1 ¶ 44). According to Vaughan, "the electoral system results in African Americans, Hispanics, and Asians having less opportunity than other LISD voters to meaningfully participate in the electoral process and to elect representatives of their choice." (Dkt. #1 ¶ 59). As a result, Vaughan believes that the at-large electoral system violates section 2 of the VRA and the Fourteenth and Fifteenth Amendments.

3

Vaughan lives within LISD and is a registered voter. (Dkt #46-2, Ex. 2 ¶ 3). However, LISD notes that Vaughan is not a member of any minority group identified in the complaint. Instead, Vaughan is a white male voter. (Dkt. #40 at 4). For his part, Vaughan does not explicitly allege his race, instead making cryptic references to "friends and neighbors" who are "African Americans, Hispanics, Asians, and other minorities" and who are denied "an equal opportunity to elect representatives of *their* choice." (Dkt. #42-2, Ex. 2 ¶ 10) (emphasis added). Although he is inexplicably coy about identifying his own race, Vaughan's filings ultimately make clear that he does not contest and, indeed, impliedly concedes that he is a white male and not a member of the African American, Hispanic, or Asian minority groups referenced in his complaint.[2] LISD contends that, because Vaughan is a white voter, as a matter of law he lacks standing to raise the asserted VRA claim, and related constitutional claims, premised on injuries purportedly suffered by African American, Hispanic, or Asian minority groups as a result of LISD's at-large electoral system.

---

[2] *See, e.g.*, (Dkt. #45 at 10 n.39) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 208–12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), for the proposition that a white tenant could be an "aggrieved person" under section 810 of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a)); (Dkt. #45 at 12 n.46) (citing *United States v. Brown*, 561 F.3d 420 (5th Cir. 2009), and *Harding v. Cnty. of Dallas*, 336 F.Supp.3d 677 (N.D. Tex. 2018), for the proposition that white voters have standing under the VRA).

## II.

### A.

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**B.**

It is a bedrock principle that the power of the federal judiciary is circumscribed by the limits set forth in Article III of the United States Constitution. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Liverpool S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)) ("The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies.'"). Article III legitimizes the use of judicial power "to declare the rights of individuals and to measure the authority of governments" in the resolution of "cases" and "controversies." *Id.* (citing *Chi. & Grant Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892)).

Embedded in the "case" or "controversy" requirement is the notion that a plaintiff must have standing, which is a plaintiff's "personal stake in the outcome." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)) (internal quotation marks omitted). The requirements of standing are well known: "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be

redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (alterations in original).

Injury in fact, the "[f]irst and foremost" of the standing requirements, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), demands that a plaintiff demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" to confer jurisdiction, *Spokeo, Inc. v. Robbins,* — U.S. —, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1) (citations and internal quotation marks omitted). It is concrete if it "actually exist[s]," either as a "tangible" injury or an intangible one that Congress has rendered legally cognizable by "grant[ing] a person a statutory right and purport[ing] to authorize that person to sue to vindicate that right." *Id.* at 1548–49. Without "some threatened or actual injury resulting from the putatively illegal action," the court is without power to adjudicate, even if doing so would "benefit others collaterally." *Warth*, 422 U.S. at 499 (internal quotation marks and citation omitted).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct.

596, 107 L.Ed.2d 603 (1990). When, as here, summary judgment under Federal Rule of Civil Procedure 56 is sought on the issue of standing, the plaintiff must "submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue." *Assoc. of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991)) (internal quotation marks omitted).

### III.

The premise of Vaughan's VRA and related constitutional claims is that African American, Hispanic, and Asian voters have suffered from the dilution of their votes because of LISD's at-large electoral system. LISD asserts that Vaughan, a white voter who is not a member of any of these minority groups, cannot have suffered the alleged race-based vote dilution underlying his lawsuit. (Dkt. #40 at 4). LISD further contends that Vaughan is inappropriately attempting to assert the rights of third parties not before the Court, namely African American, Hispanic, and Asian voters in LISD. (Dkt. #40 at 4). The Court agrees.

Section 2 of the VRA protects the right to vote by prohibiting voting practices that "result[] in a denial or abridgement of the right of any citizen of the United States to vote *on account of race or color* . . . ." 52 U.S.C. § 10301(a) (emphasis added); *see also Gingles*, 478 U.S. at 47 (quoting *Burns v. Richardson*, 384 U.S. 73, 88, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966)) (explaining that at-large voting schemes and multimember districts may impair the voting strength of racial minorities in violation

8

of the VRA). The plain text of the statute makes clear that it concerns *only* voting practices that deny or abridge a citizen's voting rights "on account of race or color." 52 U.S.C. § 10301(a).

Originally enacted in 1965 to enforce the guarantees of the Fifteenth Amendment, the VRA was thought to confer standing only on the Attorney General of the United States. *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989). But the Supreme Court clarified in *Allen v. State Bd. of Elections*, 393 U.S. 544, 557, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), that private citizens are also proper parties to seek redress against race-based infringement of voting rights.

Following *Allen*, Congress amended the VRA and expanded it to confer standing on "aggrieved persons," which, in this context, are voters attempting to enforce the "'prohibition' against the infringement of the right to vote on account of race." *Roberts*, 883 F.2d at 621 (quoting *Allen*, 393 U.S. at 557); *see also* 52 U.S.C. § 10302(a). In conferring standing by statute, Congress superseded prudential standing considerations. *Perry-Bey v. City of Norfolk*, 678 F.Supp.2d 348, 361 (E.D. Va. 2009) (quoting *Gen. Instrument Corp. v. NuTek Elecs. & Mfg.*, 197 F.3d 83, 88 (3d Cir. 1999)). Therefore, any person who meets the requirements of constitutional standing is an "aggrieved person" and also meets statutory standing requirements under the VRA. *Larry v. Arkansas*, No. 4:18-cv-00116-KGB, 2018 WL 4858956, at *7 (E.D. Ark. Aug. 3, 2018) (citing *Dep't of Com. v. U.S. House of Representatives*, 525

U.S. 316, 328–29, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Sioux Falls Cable Television v. South Dakota*, 838 F.2d 249, 252 (8th Cir. 1988)).³

"The right to vote is 'individual and personal in nature,'" and disadvantaged voters have standing to remedy that disadvantage. *Gill v. Whitford*, — U.S. —, 138 S.Ct. 1916, 1920, 201 L.Ed.2d 313 (2018) (first quoting *Reynolds v. Sims*, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), then citing *Baker*, 369 U.S. at 206). Because Vaughan asserts a vote-dilution claim that is premised on race-based bloc voting, he must have personally suffered race-based dilution of his vote—an injury that is both concrete and particularized to him—to have Article III standing to pursue the claim. *See, e.g.*, *Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020) (finding a legally cognizable injury and, therefore, standing when white plaintiffs asserted the dilution of their votes because "the Anglo voting population is packed into District 2, wasting Anglo voting power, and . . . the remainder of the Anglo population is cracked[,] . . . diluting the strength of . . . Anglo voters"); *Perry-Bey*, 678 F.Supp.2d at 363 (holding that a plaintiff did not have standing to sue under the VRA

---

³ Vaughan cites *Trafficante v. Metropolitan Life Insurance Co.* to support his contention that a white plaintiff may be an "aggrieved person." (Dkt. #45 at 10 n.39). However, the meaning of the term "aggrieved person" turns on the nature of the cause of action to which it pertains. In *Trafficante*, the Supreme Court considered whether the plaintiff was an "aggrieved person" under section 810(a) of the Civil Rights Act of 1968. 409 U.S. at 206. The statute defined "aggrieved person" as "(a)ny person who claims to have been injured by a discriminatory housing practice." *Id.* at 208 (quoting section 810(a)). In contrast, under the VRA, a person is "aggrieved" when their right to vote is infringed on account of race. *Roberts*, 883 F.2d at 621.

when she failed to allege that her vote had been "abridged on account of her race or color").[4]

Vaughan does not allege or otherwise provide the Court with any evidence that would raise an issue of material fact that *his* vote has been diluted for reasons that are legally cognizable under the VRA, only that African American, Hispanic, and/or Asian voters may have suffered a legally cognizable injury under the VRA based on LISD's electoral system. Because Vaughan fails to invoke any legally protected interest under the VRA that is personal to him and concrete, he cannot meet the injury-in-fact requirement and lacks standing.

Vaughan's argument that he suffers an injury in fact from LISD's at-large electoral system because he purportedly votes in lockstep with minority groups in all elections is unavailing. *See* (Dkt. #53 at 1–2) ("LISD's at-large electoral system causes dilution of *all votes* for candidates not preferred by the white majority, which includes plaintiff's individual vote. . . ." (emphasis in original)). This argument is untethered to the plain text of the VRA, which concerns only voting practices that deny or abridge a citizen's voting rights "on account of race or color." 52 U.S.C. § 10301. Vaughan's

---

[4] *See also Dutmer v. City of San Antonio*, 937 F.Supp. 587, 591 (W.D. Tex. 1996) (holding that a plaintiff that had not been "denied the opportunity to participate in the electoral process by reason of her race or language" had not suffered an injury in fact and did not have standing under the VRA); *Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 1083770, at *4 (E.D. Tex. Mar. 6, 2020) (holding that an Asian plaintiff had constitutional standing when he alleged that defendants had diluted the voting power of the plaintiff's own minority group).

alleged abridgment of his voting rights is self-evidently not based on his "race or color," and therefore falls outside the ambit of section 2. *See* 52 U.S.C. § 10301. As the Fifth Circuit has explained, to satisfy the injury-in-fact requirement for standing, a plaintiff "must allege more than an injury to *someone's* concrete, cognizable interest; they must 'be [themselves] among the injured.'" *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)) (emphasis and alteration in original). Although Vaughan's candidates of choice may not have been successful in prior elections, it is not because *his* vote weighs less on account of *his* race—it is, at least allegedly, because someone else's does.

Finally, Vaughan argues that courts have previously acknowledged that white plaintiffs have standing to pursue claims under the VRA. That is true, but unhelpful to Vaughan here. Of course, that Vaughan is white does not categorically preclude standing under the VRA. To the contrary, the statute prohibits any voting "standard, practice or procedure . . . on account of race or color," including a standard, practice, or procedure that denies or abridges white voters' rights because of their race or color. *See* 54 U.S.C. §§ 10301, 10302. Vaughan has cited authority confirming that such claims are cognizable under the VRA. *See Harding*, 336 F.Supp.3d at 685–86 (holding that plaintiffs had "alleged and proved that they are Anglos and that each resides in a district where, as a result of alleged 'cracking and packing,' the voting strength of

the Anglo [citizen voting age population] has been diluted" (emphasis omitted)).[5] But Vaughan's claim here is inapposite to *Harding* and similar cases because he makes no allegation that Anglo voters have suffered any voting-rights injury based on their race or color.

At the summary judgment stage, it is no longer sufficient to merely allege dilution. At most, Vaughan has shown that he experienced disappointing electoral outcomes, which is not an enforceable interest. *See Raines v. Byrd*, 521 U.S. 811, 824, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (holding that plaintiffs did not have standing when they "simply lost" a vote, rather than having their vote denied or nullified). Because the VRA only allows plaintiffs who have experienced race-based vote dilution to bring a claim and Vaughan fails to demonstrate a genuine issue of material fact on that issue, he does not have standing to pursue his claim. *See, e.g.*, *Roberts*, 883 F.2d at 621 (finding no standing under the VRA when the plaintiff did not claim "that his right to vote ha[d] been infringed because of his race"); *Perry-Bey*, 678 F.Supp.2d at 363 (holding that a complaint that fails to allege that the plaintiff is a member of a minority group and that her right to vote has been abridged on account of her race or color does not allege a constitutional injury in fact); *cf. Gill*, 138 S.Ct. at 1931 (stating that, in a partisan gerrymandering claim, the "harm arises from the particular

---

[5] In *Brown*, the other case Vaughan identifies for the proposition that a white plaintiff may bring a claim under the VRA, the plaintiff was the United States, not an individual. 561 F.3d at 426. Further, unlike here, *Brown* involved allegations that a minority group of white voters had suffered a dilution in voting strength. *Id.* at 426–27.

13

composition of the voter's own district, which causes his vote—having been packed or cracked—to carry less weight than it would carry in another, hypothetical district").

Vaughan also brings claims under the Fourteenth[6] and Fifteenth[7] Amendments of the Constitution on the same facts as his VRA claim. He alleges that the at-large electoral system has been maintained for a discriminatory purpose and denies African American, Hispanic, and Asian communities equal protection of the laws. For the same reasons that Vaughan fails to demonstrate an injury in fact under the VRA—that his vote has not been diluted on account of his race—he fails to identify an injury in fact that is concrete and particularized here. *See Hous. Indep. Sch. Dist. v. Tex. Educ. Agency,* No. 1:19-CV-684-LY, 2019 WL 6894474, at *5–*6 (W.D. Tex. Dec. 18, 2019) (holding that plaintiff did not have standing on a Fourteenth Amendment claim when there was no injury in fact on a VRA claim brought for the same reasons); *Casaburro v. Volusia Cnty. Corp.*, No. 6:07-cv-56-ORL-KRS, 2008 WL 1771774, at *3 (M.D. Fla. Apr. 15, 2008) (holding that there was no standing to bring VRA or Fifteenth Amendment claims because plaintiffs "did not allege that they were personally discriminated against").

---

[6] "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

[7] "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. CONST. amend. XV, § 1.

14

Accordingly, Vaughan's constitutional claims are likewise dismissed for lack of standing.

## IV.

For the reasons stated above, it is therefore **ORDERED** that Defendant Lewisville Independent School District's Motion for Summary Judgment, (Dkt. #40), is **GRANTED**. Plaintiff Frank Vaughan's claims are **ORDERED**, **ADJUDGED**, and **DECREED DISMISSED for lack of jurisdiction**.

It is further **ORDERED** that all relief not previously granted is **DENIED as moot**.

The Clerk is directed to close this civil case.

**So ORDERED and SIGNED this 31st day of July, 2020.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE