# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 9, 2023
Lyle W. Cayce
Clerk

No. 22-40057

FRANK VAUGHAN,

    *Plaintiff—Appellant*,

MICHAEL JOSEPH COLLINS; WILLIAM A. BREWER, III; BREWER STOREFRONT, P.L.L.C.,

    *Appellants*,

*versus*

LEWISVILLE INDEPENDENT SCHOOL DISTRICT,

    *Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-109

Before HIGGINBOTHAM, DUNCAN, and ENGELHARDT, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

    Frank Vaughan filed a lawsuit against Lewisville Independent School District ("LISD") and seven school board members, alleging that the district's at-large election system violated Section 2 of the Voting Rights Act

Certified as a true copy and issued
as the mandate on Mar 31, 2023
Attest:
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 22-40057

("VRA") and seeking injunctive relief.[1] The district court determined that Vaughan lacked standing to bring his Section 2 claim because he is white. The district court then granted defendants' motion for sanctions against Vaughan, his attorneys, and their law firm based on the findings that Vaughan's lawsuit was frivolous under 52 U.S.C. § 10310(e) and his attorneys multiplied proceedings unreasonably and vexatiously under 28 U.S.C. § 1927. Holding that Vaughan's lawsuit did not merit sanctions, we VACATE the district court's sanctions order and REMAND to determine the extent to which the order is footed upon specific contemptuous conduct in the attorneys' prosecution of the case.

## I.

Vaughan sued LISD and the school board members under Section 2 of the VRA, claiming that the district's at-large election system diluted the votes of non-white minorities within the district. Vaughan produced expert reports and planned to call five experts to testify to support his claim. As the school district and district court later seized upon, Vaughan did not state in his complaint that he is white and does not belong to any of the district's racial minorities.

In its motion for summary judgment, LISD argued that Vaughan lacked standing and failed to create a genuine issue of material fact under Section 2 of the VRA, as Vaughan "is not a member of any minority group he seeks to advocate for in his lawsuit (*i.e.*, Asian, Black, or Hispanic); rather, Plaintiff is white." LISD argued that Vaughan instead asserted third-party standing, and that the court should therefore dismiss his claim.

---

[1] 42 U.S.C. § 1973.

2

No. 22-40057

Vaughan responded to LISD's standing argument, contending that he had first-party standing as an "aggrieved person" under the VRA. In support of his first-party standing, Vaughan emphasized:

> The *Gill* decision[2] illustrates that standing to sue for vote dilution is an *individual* right, and to establish standing, the *individual* plaintiff must show he or she is a *voter who resides in a district affected by vote dilution*, which establishes plaintiff's injury-in-fact. He has presented admissible evidence proving that he is a registered voter who resides within the boundaries of LISD and that LISD is affected by vote dilution. To prove his individual injury of a diluted vote is redressable, Plaintiff has presented [an expert's] Illustrative District, which proves a single member district can be drawn within LISD wherein his vote would not be diluted.[3]

Arguing that he was an "aggrieved person" under the VRA, Vaughan stated that his status as a resident within a district where an at-large system operates to dilute his vote—impairing his ability to elect candidates of his choice in violation of the Voting Rights Act and Fourteenth and Fifteenth Amendments—gives him standing to sue on his own behalf and on behalf of all others whose votes were similarly diluted.

The district court found these arguments unconvincing, granting LISD summary judgment on the standing issue because Vaughan was a white

---

[2] *Gill v. Whitford*, 138 S. Ct. 1916 (2018).

[3] Vaughan also alleged "that LISD's at large electoral system denies equal voting opportunity to voters of color *and* many parents of children enrolled in LISD schools, thereby denying these *residents*, of which he is one, the opportunity to elect representatives of their choice in violation of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the Constitution." He contended that he did not have "a fair opportunity to elect candidates of his choice and ensure that his voice, and the voices of his community, are factored into LISD's decisions."

No. 22-40057

voter and not a member of any of any of the minority groups discussed in his complaint. The VRA only applies to plaintiffs who have experienced race-based vote dilution, the court determined, and he therefore lacked standing to bring his claim. LISD moved for, and the district court granted, costs taxable under 28 U.S.C. § 1920.

LISD next moved for punitive sanctions: award of attorney's fees under 42 U.S.C. § 1988(b), (fee shifting provision for civil rights litigation), 28 U.S.C. § 1927 (fee shifting provision for attorneys), and 52 U.S.C. § 10310(e) (the VRA's fee-shifting provision for parties). The district court granted the motion.[4]

The court found that Vaughan's claims were frivolous and unreasonable, determining that LISD was entitled to an award of attorney's fees under § 10310(e).[5] The district court next considered § 1927, which provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be liable for costs and fees. The court found attorney's fees appropriate "because LISD has proven by clear and convincing evidence that Vaughan's case was 'unwarranted and should neither have been commenced or persisted in.'" The district court also assessed fees against Vaughan's attorneys for irrelevant lines of questioning pursued during four depositions.

Finally, the district court calculated the fees and held Vaughan, his attorneys, and their law firm jointly and severally liable for $49,498.25—

---

[4] The court declined to decide whether § 1988(b) empowers a defendant to recover fees for a VRA claim, determining that Vaughan and his attorneys were liable under the other two statutes.

[5] The district court relied on § 10310(e) instead of § 1988(b), concluding that it is unclear whether § 1988(b) applies to VRA cases and that § 10310(e) granted the district court the power to shift fees regardless.

No. 22-40057

roughly one-third of the fees LISD paid for its defense. Vaughan and his attorneys timely appealed, arguing that the district court abused its discretion in awarding the fees.

## II.

We review sanctions awards for abuse of discretion.[6] "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[7]

## III.

We first consider the district court's assessment of attorney's fees under the VRA's fee-shifting provision, § 10310(e). That statute provides for "the prevailing party" in a lawsuit to recover "a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."[8] The VRA's fee-shifting language is subject to the Supreme Court's guidance in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, however, which limits fee-shifting for prevailing defendants in civil rights cases to instances where the "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[9]

In *Christiansburg,* the Equal Employment Opportunity Commission brought a lawsuit against a company under Title VII pursuant to a statutory

---

[6] *Procter & Gamble Co.*, 280 F.3d 519, 526 (5th Cir. 2002).

[7] *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

[8] 52 U.S.C. § 10310(e).

[9] 434 U.S. 412, 421 (1978). *See also Stenseth v. Greater Fort Worth & Tarrant Cnty. Cmty. Action Agency*, 673 F.2d 842, 848 (5th Cir. 1982) ("It is clear from this and other similar cases that courts are reluctant to award attorney's fees against plaintiffs undertaking to enforce their constitutional rights.").

provision that allowed the Commission to sue in its own name for any charges pending with the agency when Congress passed the statute in 1972.[10] The Commission's lawsuit was based on a complaint that was in fact no longer pending before the Commission, meaning that the agency had no grounds to bring the claim in federal court.[11] After dismissal, the defendant-employer moved for attorney's fees, and the district court denied the motion in part because the Commission's claim "was an issue of first impression requiring judicial resolution."[12] The Supreme Court affirmed, explaining that district courts must avoid "the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[13] "Even when the law or the facts appear questionable or unfavorable at the outset," the Court continued, "a party may have an entirely reasonable ground for bringing suit."[14] The central purpose of fee-shifting provisions in civil rights statutes, the Court later clarified, "is to vindicate the national policy against wrongful discrimination by encouraging victims to make the wrongdoers pay at law—assuring that the incentive to such suits will not be reduced by the prospect of attorney's fees that consume the recovery."[15] But this fee-shifting mechanism should not function to deter civil rights plaintiffs.[16]

---

[10] *Christiansburg Garment Co.*, 434 U.S. at 414.

[11] *Id.*

[12] *Id.* at 423.

[13] *Id.* at 421.

[14] *Id.* at 422. "This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id.*

[15] *Indep. Fed'n Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

[16] *See, e.g.*, *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 423 (7th Cir. 2005) (noting that "[a]ssessing attorneys' fees against the plaintiffs in this case would work precisely the harm the Supreme Court warned about in *Christiansburg Garment Co.*;" that

We have provided further guidance on the meaning of "frivolous" in the context of *Christiansburg*. Fees are inappropriate when a civil rights plaintiff's claim is "colorable and of arguable merit."[17] A district court may consider a range of factors in its evaluation of the plaintiff's claim, such as "whether the plaintiff established a prima facie case,"[18] whether "squarely controlling precedent" foreclosed the plaintiff's legal argument,[19] whether the plaintiff's evidence was so lacking that "there is no basis from which to say the[] claims were not frivolous,"[20] whether the defendant offered to settle,[21] and whether the plaintiff's claim was so obviously meritless that it was dismissed prior to trial.[22] When evaluating sanctions against a party, we

---

is that "[f]uture civil rights plaintiffs would be deterred from bringing potentially meritorious claims, out of the fear that they would have to pay a defendant's legal fees if they could not establish their claim."); *see also* S. Rep. No. 94–1011, at 5 (parties "seeking to enforce the rights" protected by civil rights legislation function as "private attorneys general" and "should not be deterred from . . . vindicat[ing] . . . fundamental rights . . . by the prospect of having to pay their opponent's counsel fees should they lose").

[17] *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986) (citing *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)).

[18] *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).

[19] *Jones*, 656 F.2d at 1147; *see also Christiansburg*, 434 U.S. at 423.

[20] *Myers v. City of West Monroe*, 211 F.3d 289, 293 (5th Cir. 2000); *see also Vaughner*, 804 F.2d at 878 (citing presentation of "some credible evidence" as "tend[ing] to establish the colorable merit of the plaintiffs' action"); *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163, 1170 (5th Cir. 1982) (same).

[21] *Mississippi*, 921 F.2d at 609. We have noted, however, that "whether a defendant offers to settle a case is of questionable value in determining whether the plaintiff's claims are frivolous." *Myers*, 211 F.3d at 292.

[22] *Id.*; *see also Myers*, 211 F.3d at 293 (citing *Hidden Oaks, Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)) (noting that dismissal alone is insufficient to support a finding of frivolity). Appellees are correct that this court provided some factors for evaluating frivolity determinations in *Mississippi*, 921 F.2d at 609. Yet our precedent makes clear that district courts are not constrained to those three factors alone when evaluating the frivolous nature of a civil rights claim.

No. 22-40057

have also found pertinent whether parties advancing "controversial" theories make good-faith attempts to "extend the law."[23] The relevance of these factors naturally varies based on whether the defect in the plaintiff's case was legal or factual in nature.

In *Jones v. Texas Tech University*, we determined that attorney's fees were inappropriate where a civil rights plaintiff raised claims of "some arguable merit."[24] In that case, parties to a civil rights lawsuit related to on-campus demonstrations entered into a consent agreement that waived all other claims in the matter.[25] The plaintiff nonetheless filed a subsequent lawsuit alleging that the university violated his due process rights during disciplinary matters raised in the original lawsuit's complaint.[26] The district court concluded that res judicata applied and that no due process violation occurred regardless, finding the suit frivolous and granting the university attorney's fees.[27] We reversed, reasoning that the plaintiff's theory that res judicata did not apply because the first lawsuit was not brought in his personal capacity was "not entirely unreasonable or implausible."[28] Regarding the due process claim, we concluded that "[i]n the absence of squarely controlling precedent, we cannot say that [the plaintiff's] contention that the [university] violated his right to due process was frivolous."[29]

---

[23] *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1298 (5th Cir. 1994).

[24] 656 F.2d at 1147.

[25] *Id.* at 1140.

[26] *Id.*

[27] *Id.* at 1141.

[28] *Id.* at 1146.

[29] *Id.* at 1147.

No. 22-40057

In contrast, we affirmed a district court's award of attorney's fees in *Myers v. City of West Monroe*, where a civil rights plaintiff put forward "no evidence" to substantiate the claims raised in her complaint.[30] In that case, the plaintiff brought a § 1983 suit alleging that a police officer violated her Fourth Amendment rights by conducting an illegal stop and search of her vehicle.[31] The district court granted judgment as a matter of law for the officer and awarded attorney's fees due to a "complete lack of evidence" substantiating the plaintiff's claims.[32] We determined that the court was within its discretion to award fees because the plaintiff "put on no evidence" and "there [was] no basis from which to say these claims were not frivolous."[33]

In this case, Vaughan argued that he had standing to bring a lawsuit under Section 2 of the VRA because he resided in a district affected by vote dilution, and this vote dilution occurred on the basis of race or color. In making this argument, Vaughan sought to extend *Gill v. Whitford*, a political gerrymandering case holding that dilution of an individual's vote is a concrete harm when that individual lives in an affected district.[34] The district court rejected Vaughan's attempt to extend the law.

In its order granting attorney's fees, the district court concluded that Vaughan's claim did not constitute a cognizable injury, finding it "frivolous and unreasonable." The court first determined that it "was not able to reach the issue of whether Vaughan established a prima facie case because he did

---

[30] 211 F.3d at 293.

[31] *Id.* at 290.

[32] *Id.* at 291.

[33] *Id.* at 293.

[34] 138 S. Ct. 1916, 1929–30 (2018).

9

not establish standing, which is a foundational element of any claim." The district court also found that "Vaughan did not even attempt to assert an injury in fact, he ignored well-settled case law regarding standing, and he made no credible arguments as to his ability to pursue his claims against LISD." In addition, LISD did not offer to settle, and the case did not proceed to trial. Based on these observations, the district court found that LISD was entitled to an award of attorney's fees under § 10310(e).

We conclude that sanctions against Vaughan were unwarranted because precedent in this circuit did not squarely foreclose his legal argument and because he sought to extend existing law. Critically, LISD points to no precedent in this circuit considering whether a voter in his position has standing under the VRA, let alone "squarely controlling precedent."[35] No court of appeals has considered this question, and we found only a single out-of-circuit district court opinion analyzing the issue.[36] Furthermore, Vaughan argued that a recent Supreme Court case supported his claim to a voting injury. His argument is not sanctionable simply because the district court concluded it was wrong, particularly given ongoing evolution in courts' views on standing in redistricting cases. As the Supreme Court noted in *Christiansburg*, "[t]his kind of hindsight logic could discourage all but the most airtight claims."[37] For these reasons, fee shifting in this civil rights case

---

[35] *Jones*, 656 F.2d at 1147.

[36] *See Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 363 (E.D. Va. 2009) (dismissing the plaintiff's claims because she made no allegation "that she is a member of a minority group and that her right to vote has been abridged on account of her race or color.").

[37] *Christiansburg Garment Co.*, 434 U.S. at 422.

was inappropriate.[38] By vacating the sanction against Vaughan, we express no opinion on the correctness of his standing theory.

## IV.

We next consider the district court's award of attorney's fees against Vaughan's counsel under § 1927. That statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[39]

A district court must find that the attorney's multiplication of the proceedings was both "unreasonable" and "vexatious."[40] The finding must be based on "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[41] The district court may award "only those fees and costs associated with the persistent prosecution of a meritless claim."[42] The district court must also make detailed factual findings that "(1) identify

---

[38] LISD claims that Vaughan forfeited his argument that his claim was not frivolous under § 10310(e). To avoid forfeiture, a "litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). Vaughan pressed his claim to standing before the district court, and the district court had the opportunity to fully consider the matter. Having defended his position, an action that includes the implicit assertion that the position is meritorious, Vaughan did not forfeit the argument that his claim is not frivolous.

[39] 28 U.S.C. § 1927.

[40] *F.D.I.C. v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).

[41] *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

[42] *Browning v. Kramer*, 931 F.2d 340, 345–46 (5th Cir. 1991).

No. 22-40057

sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes" to facilitate review on appeal.[43]

In addition, "[a] party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions under [§ 1927] when the court ultimately rejects the claim."[44] Yet "[n]o multiplication of proceedings would be more vexatious than one which gave a frivolous claim the appearance of trial-worthy merit."[45] "To prevent the courts from dampening the legitimate zeal of an attorney in representing her client, we have interpreted § 1927 as penal and construed it in favor of the sanctioned party."[46] As such, sanctions under the statute are to be "sparingly applied."[47] Fees may only be imposed against counsel, not parties.[48]

In this case, the district court awarded fees against Vaughan's attorneys after finding that they unreasonably and vexatiously multiplied the proceedings by filing the action and pursued irrelevant lines of questioning during depositions. As Vaughan's lawsuit was not frivolous and relied on an

---

[43] *Procter & Gamble Co.*, 280 F.3d at 526.

[44] *Id.* at 531–32.

[45] *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 481 (5th Cir. 2012).

[46] *Procter & Gamble Co.*, 280 F.3d at 526 (cleaned up and internal quotations and citations omitted).

[47] *Laws. Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014).

[48] *Procter & Gamble Co.*, 280 F.3d at 525.

"unsettled legal theory,"[49] his attorneys cannot be sanctioned under § 1927 simply for filing the action.

Vaughan's attorneys nonetheless fail to convince this court that the district court abused its discretion in awarding fees for conduct during depositions. The attorneys questioned school board members on a range of topics that bear little relevance to a voting rights lawsuit, including a separate Title IX suit against the school district, claims of sexual harassment at a school, state standardized testing, mental health accommodations for students during standardized testing, and board members' individual views on policy topics such as allowing teachers to carry guns on campus. Vaughan and his attorneys offer no theory of relevance to this court, noting only that LISD did not move to quash the depositions and made only form objections. While parties should resort to protective orders and attorney's fees under Rule 30 of the Federal Rules of Civil Procedure as a first line of defense,[50] this court has never held that failure to file a Rule 30 motion precludes later relief under § 1927 for unreasonable and vexatious multiplication of proceedings. The district court did not abuse its discretion in awarding fees LISD incurred for these depositions.

On remand, the district court should identify "which, if any, excess costs, expenses, or attorney's fees were incurred because" of the attorneys' unreasonable and vexatious multiplication of proceedings through irrelevant deposition topics.[51]

---

[49] *Procter & Gamble Co.*, 280 F.3d at 531–32.

[50] *See, e.g.*, *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516–17 (5th Cir. 1985).

[51] *Browning*, 931 F.2d at 345–46.

## V.

Finally, Vaughan and his attorneys argue that § 1927 does not allow a district court to award attorney's fees against law firms. We agree. The statute's plain text provides for sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof."[52] Courts do not admit law firms to conduct cases, but instead admit individual attorneys. We furthermore find the Seventh Circuit's opinion in *Clairborne v. Wisdom* persuasive in its review of the statute's text, the Supreme Court's interpretation of an earlier version of Rule 11, and the specific inclusion of "law firms" in the revised version of Rule 11.[53] As such, we join the majority of our sister circuits in holding that § 1927 does not provide grounds for a district court to award attorney's fees against law firms or other entities not admitted to practice law.[54] Like the Seventh Circuit, we decline to adopt the Eleventh Circuit's viewpoint that § 1927 allows a district court to award attorney's fees against law firms, finding no clear reasoning for doing so.[55]

---

[52] 28 U.S.C. § 1927.

[53] *See* 414 F.3d 715, 722–24 (7th Cir. 2005).

[54] *See, e.g.*, *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010); *Claiborne*, 414 F.3d at 724 ("We conclude here only that § 1927 does not provide a legal basis for an order of fees against an entity like a law firm that is not itself 'admitted to practice' before the tribunal."); *Kaass L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1295 (9th Cir. 2015).

[55] *See Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (relying on courts' inherent power to sanction bad faith conduct, rather than § 1927); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (misinterpreting *Avirgan* to allow for sanctions against law firms under § 1927); *see also Claiborne*, 414 F.3d at 723 (noting the disconnect).

No. 22-40057

\*\*\*\*

We VACATE the district court's sanctions order and REMAND to determine the extent to which the order is footed upon specific contemptuous conduct in the attorneys' prosecution of the case.